**Jessica LAWRENCE, Plaintiff–Appellant,**

**v.**

**UNITED STATES of America; Matt Hanrahan; Timothy M. Messuri; John Does 1–10; Probation Office, United States; Marshal Office, United States, Defendants–Appellees.**

No. 01–36142.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 9, 2003.

Filed Aug. 21, 2003.

Scott D. Hess, Jones, Gledhill, Hess, Andrews, Fuhrman, Bradbury & Eiden, Boise, ID, for the plaintiff-appellant.

Robert C. Grisham, Assistant United States Attorney, Boise, ID, for the defendants-appellees.

Before LAY,* WALLACE, and TALLMAN, Circuit Judges.

LAY, Circuit Judge:

This appeal arises from a district court ruling in favor of two federal officers, filed as a *Bivens* claim,[1] involving allegations of

---

* The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

1. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (authorizing the filing of an action against individual federal employees by a citizen suffering a compensable injury to a constitutionally protected interest).

sexual abuse of Jessica Lawrence, a minor, by Fernando Bello, a/k/a Fernando Soler ("Bello"). Bello is a convicted felon who was a participant in the Federal Witness Security Program ("WitSec"). Bello was given a new identity and placed in Boise, Idaho, after serving four years in a federal penitentiary following conviction for aggravated trafficking in cocaine. WitSec is supervised by the United States Marshals Service ("USMS") and the United States Probation Office ("USPO"). USMS took control and custody of Bello after he was released from prison. The record indicates United States Marshal Matt Hanrahan was assigned to protect Bello. Inspector Hanrahan met Bello upon his arrival in Boise in March, 1994. The USPO record indicates an unexplained delay in USPO initiating supervision of Bello, and once Probation Officer Timothy Messuri became aware of Bello's presence in the District of Idaho, he initiated supervision of Bello.

The sexual abuse took place while Lawrence was a resident at Challenge Group Home ("CGH"), a residential care facility for juveniles. Bello was employed as a behavior technician at CGH. After Bello left CGH's employment, he became licensed as a foster parent. The Idaho Department of Health and Welfare ("IDHW") then removed Lawrence from CGH and placed her in Bello's custody as his foster child. The sexual abuse continued during the time Bello was Lawrence's foster parent.

On February 21, 2001, the district court granted Defendants' motion to dismiss five of the seven counts brought by the Plaintiff. The remaining claims included the *Bivens* claim against Inspector Hanrahan and Officer Messuri, and a claim under the Federal Torts Claim Act ("FTCA") against the United States. 28 U.S.C. § 1346(b). On November 9, 2001, the district court granted Defendants' motion for summary judgment on the remaining counts. The district court held that Inspector Hanrahan's and Officer Messuri's actions were objectively reasonable, and that they were entitled to qualified immunity on the *Bivens* claims. The district court granted summary judgment on Plaintiff's FTCA claim, holding that the discretionary function and the misrepresentation exceptions applied to the actions of the agents in this case. We affirm.

The record shows in April, 1996, Bello notified Inspector Hanrahan that he had been hired as a counselor at CGH, and that the position required a background check and fingerprinting. As a licensed group home, CGH is required to have its employees licensed through IDHW. One of the licensing requirements is a criminal background check. Inspector Hanrahan accompanied Bello to his appointment with IDHW for fingerprinting. Officer Messuri reviewed Bello's conditions of supervision to confirm that he was not precluded from any employment. Officer Messuri also reviewed Bello's criminal and personal history sections of his Pre-Sentence Report, and concluded that the only foreseeable risk posed by Bello was the use of controlled substances or the distributing of drugs.

Inspector Hanrahan met with various officials from IDHW, informing them that Bello had a criminal history, was in WitSec, and could not be fingerprinted without breaching security. Inspector Hanrahan requested that Bello's criminal history be provided in lieu of fingerprinting. Inspector Hanrahan was eventually referred to Mary Jo Beig, a Deputy Attorney General who provided legal advice to IDHW. Inspector Hanrahan informed Ms. Beig that Bello had been charged with an aggravated drug trafficking crime.

Inspector Hanrahan testified that in June, 1996, he received a call from IDHW

requesting further clarification of the term "aggravated." Inspector Hanrahan was informed that under IDHW exemption rules, a crime of violence would automatically rule out an individual for the exemption process. Inspector Hanrahan testified that he contacted the Ohio prosecutor for clarification of the term "aggravated," and was advised that "aggravated" referred to the quantity of drugs involved, not to the use of a firearm or violence in committing the crime. Inspector Hanrahan passed this information to IDHW.

Subsequently, IDHW agreed to conduct an exemption hearing at which Inspector Hanrahan and Officer Messuri testified on June 13, 1996. A copy of Bello's sanitized criminal history report was furnished for IDHW. Inspector Hanrahan and Officer Messuri informed IDHW that Bello had been involved in a drug conspiracy, and described his role in the conspiracy as that of a translator. IDHW was not informed that this drug conspiracy involved one of the top ten drug cartels in the United States, nor that there had been deaths of witnesses in the conspiracy. There is no evidence to show that Bello was involved in any deaths of witnesses.[2] At the time of Bello's arrest, guns were found in his apartment and he was given an enhanced sentence of five years.[3] Bello pled guilty to two state charges of aggravated trafficking in cocaine, and pled guilty to one federal charge of conspiracy to possess with intent to distribute over five kilograms of cocaine. He served forty-five months of his sentence before he was released from a federal correctional facility and authorized into WitSec.

*Qualified Immunity*

A district court's decision to grant summary judgment on the grounds of qualified immunity is reviewed *de novo*. *Case v. Kitsap County Sheriff's Dep't*, 249 F.3d 921, 925 (9th Cir.2001). Summary judgment on the basis of qualified immunity is not proper unless the evidence permits only one reasonable conclusion. *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1087 (9th Cir.2000). "Where 'conflicting inferences may be drawn from the facts, the case must go to the jury.'" *Id.* (quoting *LaLonde v. County of Riverside*, 204 F.3d 947, 959 (9th Cir.2000)).

The right to sue federal agents for monetary damages based on constitutional wrongs was first recognized in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). A *Bivens* claim requires a two-part analysis. First, a plaintiff must prove that a constitutional right is clearly established. *Anderson v. Creighton*, 483 U.S. 635, 639–40, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). If the right is not clearly established, the defendant is entitled to qualified immunity. *Id.* If the right is clearly established, the court must determine whether the defendant's conduct was "objectively legally reasonable" given the information possessed by the defendant at the time of his or her conduct. *Id.* at 641. Plaintiff's claim is brought based on the alleged violation of her constitutional right to be free from an

---

**2.** At the time of his arrest, Bello was not carrying a weapon and there was no proof that he ever carried or used a weapon.

**3.** Although Officer Messuri testified that he informed IDHW that weapons were confiscated from Bello's residence at the time of his arrest, testimony from IDHW officials was equivocal on this issue. Gary Payne, IDHW Regional Director, testified that he was not informed of this information, but stated it would have been relevant to IDHW's determination regarding Bello's ability to safely provide services. Mary Jo Beig testified that she might have been informed that Bello was in possession of weapons at the time of his arrest, but could not recall with certainty.

unjustified intrusion into her personal security in violation of her liberty interest as set forth in the Fifth Amendment.

The determination of whether a constitutional right is clearly established is a question of law. *Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). The constitutional right to personal security is a liberty interest secured by the Fifth Amendment, and was clearly established at the time of Defendants' actions. *See Ingraham v. Wright,* 430 U.S. 651, 673, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977); *Wood v. Ostrander,* 879 F.2d 583, 589 (9th Cir.1989).

Here, Plaintiff alleges that it was only through the assistance of Defendants Inspector Hanrahan and Officer Messuri that Bello was able to secure a job as a behavior therapist at the juvenile treatment center where she resided, and later to obtain a license to serve as her foster parent. Plaintiff argues that Defendants assisted Bello in securing this position by persuading Idaho state officials to circumvent their usual background checks and security measures in screening Bello, and by providing incomplete information regarding Bello's criminal history.

We agree with the district court's holding that Lawrence's liberty interest, protected by the Fifth Amendment, was clearly established at the time of the Defendants' alleged actions. The second step of the inquiry is to determine whether a defendant's conduct was objectively legally reasonable. "[Q]ualified immunity shields agents ... if 'a reasonable officer could have believed [the action] to be lawful, in light of clearly established law and the information the [arresting] officers possessed.'" *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (quoting *Creighton,* 483 U.S. at 641, 107 S.Ct. 3034). An officer is entitled to immunity unless any reasonably competent official would "fairly be said to know that

the law forbade [the] conduct" in question. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (internal quotation marks omitted).

■ The district court reasoned that Inspector Hanrahan's behavior was objectively reasonable, given the absence of directives, standards, or information that someone with Bello's background should be prohibited from working with children. The district court found that Inspector Hanrahan had no information that would lead him to believe that Bello would harm the children at CGH. The district court further found that Inspector Hanrahan provided IDHW with Bello's complete criminal background history with only his former name redacted. Although Bello's criminal history report may not have been completely updated at the time it was provided to IDHW, it was obvious from the rap sheet that Bello had been convicted of a serious drug felony. The record shows that IDHW expressed concerns to Inspector Hanrahan about any prior history of Bello involving violence or the use of firearms. The record indicates Inspector Hanrahan accurately answered all questions posed to him by IDHW officials regarding Bello's criminal background. The district court held that such conduct was objectively reasonable, and that Inspector Hanrahan was entitled to qualified immunity. We agree.

With regard to Officer Messuri, the district court held that he properly reviewed Bello's conditions of supervision and verified that there were no prohibitions against Bello working with juveniles. Officer Messuri also reviewed Bello's Pre-Sentence Investigation Report and determined that there was no history of sexual abuse, personal drug use, violence, or victimization of children. Based on this review, as well as on his personal supervision of Bello, the district court correctly held that

Officer Messuri was objectively reasonable in making available to IDHW this information as well as his findings based on this information.

*Proximate Cause*

■ As an alternative ground, the district court found there was no proximate cause established between the Defendants' alleged misconduct and the ultimate harm of sexual abuse of Ms. Lawrence. A "danger-creation exception" is created where there is affirmative conduct on the part of the government that results in placing an individual in a position of danger. *See e.g., Munger,* 227 F.3d at 1086. Where such affirmative conduct occurs, a government official has a duty to provide a basic level of safety and security to that individual.

This court has previously applied the danger-creation exception in circumstances in which the affirmative action of a government agent places an individual in danger. *Id.* at 1087 (holding qualified immunity does not apply where police ejected plaintiff from a bar late at night into subfreezing weather wearing only a t-shirt and jeans and developed hypothermia). *See also Penilla v. City of Huntington Park,* 115 F.3d 707, 710 (9th Cir.1997) (declining to grant qualified immunity where police, responding to a 911 call, found plaintiff in serious need of medical care, and cancelled the request for paramedics, moved plaintiff inside his residence, locked the door and left); *Kneipp v. Tedder,* 95 F.3d 1199 (3rd Cir.1996) (refusing to grant qualified immunity where a woman suffered severe hypothermia after police detained her, then allowed her to walk home alone and intoxicated on a cold night). However, in each of the cases in which we have applied the danger-creation exception, ultimate injury to the plaintiff was foreseeable.

■ In the present case, to allege liability based on the danger-creation exception, the Plaintiff must show that Officer Messuri and Inspector Hanrahan acted affirmatively, and with deliberate indifference, in creating a foreseeable injury to Plaintiff. *See Huffman v. County of Los Angeles,* 147 F.3d 1054, 1061 (9th Cir.1998); *Van Ort v. Estate of Stanewich,* 92 F.3d 831, 836–37 (9th Cir.1996). Here, Bello's criminal history consisted of a drug trafficking conviction, but no crimes of violence or sexual abuse. Although it might have been foreseeable that Bello would distribute illegal drugs to the children at CGH, it was not foreseeable that he would sexually abuse them. We affirm the district court's findings that the harm to Jessica Lawrence was not foreseeable and that Plaintiff has failed to show the Defendants' conduct was the proximate cause of her injuries.

*Federal Tort Claims Act*

The FTCA authorizes suit against the United States for negligent performance of governmental functions. 28 U.S.C. § 1346(b). The Act is subject to some exceptions, including the discretionary function exception, as well as the misrepresentation exception. The district court found that both exceptions applied in this case, and granted summary judgment for Defendants.

The discretionary function exception exempts from liability "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The determination of whether the discretionary function exemption bars a suit against the Government is evaluated according to established principles. *Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). The focus is on the conduct of the individual in question, not on the status of the

actor. *Id.* The first inquiry is whether the action is a matter of choice for the acting employee. Conduct cannot be discretionary unless it involves an element of choice. *Id.* citing *Dalehite v. United States,* 346 U.S. 15, 34, 73 S.Ct. 956, 97 L.Ed. 1427 (1953) (reasoning that the exception protects "the discretion of the executive or the administrator to act according to one's judgment of the best course . . . .").

Where the challenged conduct involves a matter of choice or judgment by an individual, the court must determine if it was the type of judgment that the Act intended to shield from liability. *Berkovitz,* 486 U.S. at 536–37, 108 S.Ct. 1954. "The basis for the discretionary function exception was Congress' desire to 'prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" *Id.* (quoting *United States v. Varig Airlines,* 467 U.S. 797, 814, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984)). This exception shields the government from liability where a permissible exercise of policy judgment is exercised by a government employee. *Id.*

▮ Here, Plaintiff claimed that Inspector Hanrahan and Officer Messuri were negligent in permitting Bello to go through IDHW's exemption process to pursue employment at CGH, as well as by failing to provide IDHW with full, complete, and accurate information at the exemption hearing.

The district court held that the supervision of a relocated witness is a discretionary function, and as such, Inspector Hanrahan's actions constituted discretionary actions. *See Jet Industries, Inc. v. United States,* 777 F.2d 303, 306 (5th Cir. 1985); *Bergmann v. United States,* 689 F.2d 789, 793–94 (8th Cir.1982). As to Officer Messuri, the district court reasoned that a probation officer's determination of whether a reasonably foreseeable

risk exists depends upon a selective case-by-case evaluation, and therefore significant officer discretion is presumed. *See Weissich v. United States,* 4 F.3d 810, 814 (9th Cir.1993) (holding a probation officer's decisions regarding risk assessment, and warning of a threat posed by a federal probationer, are policy decisions protected by the discretionary function exception).

▮ In addition to the discretionary function exemption, the district court held that the misrepresentation exception also applied to Plaintiff's claim that Inspector Hanrahan and Officer Messuri failed to provide IDHW with full, complete, and accurate information at the exemption hearing. 28 U.S.C. § 2680(h). The misrepresentation exception shields government employees from tort liability for failure to communicate information, whether negligent, or intentional. *See United States v. Neustadt,* 366 U.S. 696, 705–06, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961). Here, Plaintiff's claim was based on Inspector Hanrahan and Officer Messuri's alleged failure to communicate certain information at the exemption hearing. The district court properly held that both the discretionary function exception and the misrepresentation exception applied, and Plaintiff's FTCA claim is barred. We affirm.

The district court properly found that Plaintiff's remaining claims regarding discovery requests are moot.

AFFIRMED.