Partial Concurrence and Partial Dissent by Judge MURGUIA
Dissent by Judge NOONAN
OPINION
W. FLETCHER, Circuit Judge:
This appeal stems from the death of Daniel Pauluk, an employee of the Clark County Health District (“CCHD”) in Nevada. Pauluk’s widow and daughters sued the CCHD and two of its employees, Edward Wojeik and Glenn Savage, alleging that their exposure of Pauluk to a workplace environment infested with toxic mold caused his death, in violation of the Due Process Clause of the Fourteenth Amendment. The district court denied summary judgment to Wojeik and Savage (collectively, “individual Defendants”). They bring an interlocutory appeal, contending that they are entitled to qualified immunity.
This case lies at the intersection of two lines of authority — on the one hand, the state-created danger doctrine under which constitutional due process claims may be brought; on the other, the Supreme Court’s decision in Collins v. City of Harker Heights, 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992), declining to find a general due process right to a safe work *1119 place. We hold that Collins does not bar Plaintiffs’ due process claim. Plaintiffs have stated a claim under the state-created danger doctrine, notwithstanding the fact that the danger at issue is a physical condition in the workplace. However, we reverse the district court’s denial of summary judgment as to Wojcik and Savage, on the ground that the due process right asserted by Plaintiffs was not clearly established at the time of the violation.
I. Background
A. Facts
Because this is an appeal from the denial of the individual Defendants’ motion for summary judgment, we view the facts in the light most favorable to Plaintiffs. Kennedy v. City of Ridgefield, 439 F.3d 1055, 1059 (9th Cir.2006). Except as noted, we recount the facts as viewed in this light.
Daniel Pauluk worked for the CCHD in Nevada as an Environmental Health Specialist from. 1998 until illness forced him to take leave in 2005. During his tenure at the CCHD, Pauluk was transferred a number of times. He was initially assigned to the CCHD’s “Shadow Lane” facility. He later worked at two satellite offices before being transferred back to Shadow Lane in February 2003. Pauluk did not want to return to Shadow Lane due to concerns about the presence of mold. Shadow Lane, along with several other Clark County buddings, suffered from chronic roof and water leakage problems that resulted in the proliferation of toxic mold inside the facilities. Pauluk was transferred back to Shadow Lane, over his objection, because his supervisor had been reassigned to that facility.
Between 2003 and 2005, while he was working at Shadow Lane, Pauluk complained repeatedly about mold. For example, he requested testing of a ceiling panel above his desk “[d]ue to the history of mold” in the building, and he reported “mold spores” found near his desk. Pauluk repeatedly requested, both orally and in writing, that he be transferred from Shadow Lane because mold exposure was adversely affecting his health.
Defendants Edmund Wojcik and Glenn Savage worked at Shadow Lane during the time at issue. Both were Pauluk’s superiors in his chain-of-command. Pauluk reported to his immediate supervisor, Paul Klouse, who reported to Wojcik, who reported to Savage. When Pauluk made a transfer request or a report about mold, it was ordinarily made to Klouse and was then “channelled]” up to Wojcik and Savage. On one occasion, Pauluk personally asked Wojcik for a transfer, but Wojcik told Pauluk that he needed to follow the proper “channel” when making a transfer request. Although the parties dispute the manner in which Wojcik and Savage responded to Pauluk’s complaints about mold, they agree that all of Pauluk’s transfer requests were denied.
Plaintiffs maintain that Pauluk’s exposure to mold at Shadow Lane led to Pau-luk’s illness and eventual death. Pauluk was exposed to mold starting as early as 1998, but he did not start having health problems until he was transferred back to Shadow Lane in 2003. Shortly after this transfer, Pauluk began to experience a number of adverse health effects, including “mental confusion & slow thinking,” “chronic exhaustion,” “headaches,” “chronic diarrhea,” “airway obstruction in [his] lungs,” breathing problems, “chills,” a “stiff neck,” “cramps in back and abdomen,” vomiting, kidney cysts, and dehy- ’ dration. Deposition testimony from several doctors corroborated that Pauluk was ill and that the illness was caused by mold. One doctor testified that he treated Pauluk for a variety of ailments that the doctor concluded were the result of “toxic mold exposure.” Another doctor treated Pauluk *1120 for “aspergillosis,” an infection caused by mold. A third doctor, who treated Pauluk toward the end of his life, testified that mold exposure in the workplace “was causally related to [Pauluk’s] illness.”
Pauluk’s poor health eventually forced him to leave his job. In October 2005, Pauluk took leave under the Family and Medical Leave Act based on his doctor’s Labor- Department certification stating that he was suffering from “[t]oxic mold exposure with airflow obstruction.” Pau-luk’s illness progressively worsened during the next two years. He died on July 17, 2007. Pauluk’s death certificate originally stated that his cause of death was “end stage debility” and “chronic obstructive pulmonary disease.” The' certificate was amended a month later to state that the cause of death was “mixed mold mycotoxi-cosis.”
B. Procedural History
After Pauluk’s death, his wife and daughters filed suit under 42 U.S.C. § 1983 against the CCHD, Wojcik, and Savage. They alleged that CCHD and the individual Defendants’ role in exposing Pauluk to a dangerous, mold-infested work environment caused his death. They brought claims under the Due Process Clause of the Fourteenth Amendment as well as under state law. After years of litigation in state and federal court, Wojcik and Savage moved for summary judgment. They contended that there was insufficient evidence to support Plaintiffs’ claims (1) that Shadow Lane was unconstitutionally unsafe, (2) that the defendants acted with deliberate indifference, and (3) that there was a causal relationship between conditions at Shadow Lane and Pauluk’s death. Wojcik and Savage also argued that they were entitled to qualified immunity.
The district court granted in part and denied in part Wojcik and Savage’s motion for summary judgment. The court granted summary judgment to them on a negligent supervision and training claim but denied summary judgment as to all other claims.
Defendants Wojcik and Savage filed this interlocutory appeal seeking review of the district court’s order denying qualified immunity. On July 2, 2014, a motions panel of this court denied without prejudice Plaintiffs’ motion to dismiss for lack of jurisdiction. See Nat’l Indus., Inc. v. Republic Nat’l Life Ins. Co., 677 F.2d 1258, 1262 (9th Cir.1982) (stating that a merits panel may consider appellate jurisdiction despite an earlier denial of a motion to dismiss).
II. Standard of Review
We review de novo a challenge to our appellate jurisdiction over an interlocutory appeal. Bingue v. Prunchak, 512 F.3d 1169, 1172 (9th Cir.2008). We also review de novo an interlocutory appeal from the denial of summary judgment based on qualified immunity. Kennedy, 439 F.3d at 1059.
III. Appellate Jurisdiction
Plaintiffs contend that we lack jurisdiction over this interlocutory appeal because the district court based its denial of summary judgment on purely factual grounds. The individual Defendants, on the other hand, contend that we have jurisdiction over the “purely legal” question of whether, “assuming the factually-supported version of events offered by [Plaintiffs] is correct,” the district court erred in denying qualified immunity. We agree with the individual Defendants.
In general, we have jurisdiction to hear appeals only from “final decisions.” 28 U.S.C. § 1291; Johnson v. Jones, 515 U.S. 304, 309, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995). However, the Supreme Court has created an exception to the final judgment rule for certain interlocutory appeals when the district court has denied a motion for *1121 summary judgment based on qualified immunity. “[A] district court’s denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable ‘final decision’ within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment.” Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).
Not every interlocutory appeal from a denial of a motion for summary judgment based on qualified immunity is immediately appealable. The Supreme Court has distinguished between (1) an appeal raising the “purely legal” question of whether the facts alleged by the plaintiff demonstrate a violation of clearly established law, and (2) an appeal contesting the district court’s conclusion that a genuine issue of material fact exists. Johnson, 515 U.S. at 313, 319-20, 115 S.Ct. 2151; see also Cunningham v. City of Wenatchee, 345 F.3d 802, 807 (9th Cir.2003); Behrens v. Pelletier, 516 U.S. 299, 306, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996). Since its decision in Johnson, the Supreme Court has repeatedly stated that a court of appeals has jurisdiction over an appeal from a denial of qualified immunity, even when the district court’s order concludes that there are disputed issues of material fact. Plumhoff v. Rickard, — U.S. -, 134 S.Ct. 2012, 2018-20, 188 L.Ed.2d 1056 (2014); Behrens, 516 U.S. at 312-13, 116 S.Ct. 834 (“Denial of summary judgment often includes a determination that there are controverted issues of material fact, and Johnson surely does not mean that every such denial of summary judgment is nonappealable.” (citation omitted)). Because we do not have jurisdiction over a district court’s determination that there are genuine issues of material fact, we cannot review Wojeik and Savage’s arguments that there was insufficient evidence to show that Shadow Lane was unsafe, that the defendants acted with deliberate indifference, or that there was a causal relationship between the conditions at Shadow Lane and Pauluk’s death. But we do have jurisdiction, construing the facts and drawing all inferences in favor of Plaintiffs, to decide whether the evidence demonstrates a violation by Wojeik and Savage, and whether such violation was in contravention of federal law that was clearly established at the time. See Behrens, 516 U.S. at 312-13, 116 S.Ct. 834; Kennedy, 439 F.3d at 1060.
IV. Qualified Immunity
We apply a two-part analysis in qualified immunity cases. Kennedy, 439 F.3d at 1060. “First, a court must determine whether — resolving all disputes of fact and credibility in favor of the party asserting the injury — the facts adduced at summary judgment show that the officer’s conduct violated a constitutional right.” Id. (citing Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). Second, “if the court determines that the conduct did violate a constitutional right, [the] second prong requires the court to determine whether, at the time of the violation, the constitutional right was ‘clearly established.’ ” Id. We conclude, viewing the facts in the light most favorable to Plaintiffs, that Plaintiffs have shown a violation of the constitutional right, grounded in the Fourteenth Amendment’s Due Process Clause, to be free of state-created danger. We nonetheless reverse the district court’s denial of summary judgment because it was not clearly, established, at the time'of Wojeik and Savage’s unconstitutional actions, that the state-created danger doctrine applied to claims based on physical conditions in the workplace.
A. Due Process
Plaintiffs rely on a line of cases holding that exposure by a state actor to a state-created danger violates due process. The *1122 individual Defendants rely on Collins v. City of Harker Heights, 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992), in which the Supreme Court held that a state actor has no duty under the Due Process Clause to provide a safe workplace. We address each line of authority in turn, before turning to the interaction between the two.
1. State-Created Danger
The “general rule” is that a state actor is not liable under the Due Process Clause “for its omissions.” Munger v. City of Glasgow Police Dep’t, 227 F.3d 1082, 1086 (9th Cir.2000). There are two exceptions to this, general rule: “(1) when a ‘special relationship’ exists between the plaintiff and the state (the special-relationship exception); and (2) when the state affirmatively places the plaintiff in danger by acting with ‘deliberate indifference’ to a ‘known or obvious danger’ (the state-created danger exception).” Patel v. Kent Sch. Dist, 648 F.3d 965, 971-72 (9th Cir.2001) (citations omitted). We are concerned here with the state-created danger exception.
The exception is based in part on De-Shaney v. Winnebago County Department of Social Services, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), in which the mother of a child who was beaten and permanently injured by his father brought suit against social workers and other local officials who had permitted the child to remain with his father despite receiving complaints about abuse. The Supreme Court held that the state had no freestanding constitutional obligation to protect the child from his abusive father. According to the Court, “the harms [the child] suffered occurred not while he was in the State’s custody, but while he was in the custody of his natural father” and the state “played no part in the[ ] creation” of the dangers the child faced. Id. at 201, 109 S.Ct. 998.
Relying on this language, our court and a majority of other circuits have held that a state actor can be held liable when that state actor did “play a part” in the creation of a danger. See Gormley v. Wood-El, 218 N.J. 72, 93 A.3d 344, 360 (2014) (“Most federal circuit courts now recognize the state-created-danger doctrine as a basis for a substantive-due-process violation.” (citing Sanford v. Stiles, 456 F.3d 298, 304 (3d Cir.2006))); see also L.W. v. Grubbs (Grubbs I), 974 F.2d 119, 122 (9th Cir. 1992). Under the state-created danger doctrine, a state actor can be held liable for failing to protect a person’s interest in his personal security or bodily integrity when the state actor affirmatively and with deliberate indifference placed that person in danger. The doctrine holds state actors liable “for their roles in creating or exposing individuals to danger they otherwise would not have faced.” Kennedy, 439 F.3d at 1062.
Our circuit first recognized the state-created danger doctrine in Wood v. Ostrander, 879 F.2d 583 (9th Cir.1989), in which a police officer pulled over a car in the early morning. After arresting the driver, the officer left the female passenger alone in a high crime area at 2:30 a.m. The passenger was subsequently attacked and raped. We held that the officer could be held liable under § 1983 for the attack and rape because, according to the plaintiffs evidence, the officer “affirmatively place[d] her in danger and then abandoned] her.” Id. at 596. Since Wood, we have repeatedly analyzed various constitutional allegations premised on the state-created danger doctrine. See, e.g., Campbell v. Wash. Dept. of Soc. Servs., 671 F.3d 837 (9th Cir.2011); Patel, 648 F.3d 965; Johnson v. City of Seattle, 474 F.3d 634 (9th Cir.2007); Kennedy, 439 F.3d at 1062; Lawrence v. United States, 340 F.3d 952 (9th Cir.2003); Munger v. City of Glasgow Police Dep’t, 227 F.3d 1082 (9th Cir.2000); *1123 Huffman v. County of Los Angeles, 147 F.3d 1054 (9th Cir.1998); Penilla v. City of Huntington Park, 115 F.3d 707 (9th Cir. 1997); Grubbs I, 974 F.2d 119; Wood, 879 F.2d 583.
2. Collins
Wojeik and Savage contend that the Supreme Court’s decision in Collins precludes the application of the state-created danger doctrine in cases like this, where the danger is a physical condition in a government employee’s workplace. In Collins, an employee for a city sanitation department died of asphyxia after he entered a manhole to unclog a sewer line. His widow subsequently .brought a § 1983 action against the city, alleging “that her husband had ‘a constitutional right to be free from unreasonable risks of harm to his body, mind and emotions and a constitutional right to be protected from the City of Harker Heights’ custom and policy of deliberate indifference toward the safety of its employees.’ ” Collins, 503 U.S. at 126 n.9, 112 S.Ct. 1061. She further claimed that “[t]he city’s policy and custom of not training its employees and not warning them of the danger allegedly caused Collins’ death and thus deprived him of those rights.” Id. The Court summarized her claim as a “general allegation that the city deprived [Collins] of life and liberty by failing to provide a reasonably safe work environment.” Id. at 125-26, 112 S.Ct. 1061.
The Court held that the widow had not stated a cause of action. Reluctant to recognize new- due process claims that would overlap with tort claims under state law, the Court rejected “petitioner’s claim that the governmental employer’s duty to provide its employees with a safe working environment is a substantive component of the Due Process Clause.” Id. at 126, 112 S.Ct. 1061. The Court held that “the Due Process Clause does not impose an independent federal obligation upon municipalities to provide certain minimal levels of safety and security in the workplace.” Id. at 130, 112 S.Ct. 1061. In short, Collins held “that the Constitution does not guarantee a right to a safe workplace.” Jensen v. City of Oxnard, 145 F.3d 1078, 1083 (9th Cir.1998).
3. Reconciling Collins and the State-Created Danger Doctrine in Workplace Safety Cases
The threshold question before us is whether Plaintiffs’ claim under the state-created danger doctrine is foreclosed by Collins. We conclude that it is not.
This conclusion is supported by the Collins decision itself. The plaintiff in Collins did not allege a due process claim under the state-created danger doctrine. Rather, she alleged a general due process claim to a safe workplace, alleging broadly “that the Federal Constitution imposes a duty on the city to provide its employees with minimal levels of safety and security in the workplace.” Collins, 503 U.S. at 126, 112 S.Ct. 1061. In rejecting the plaintiffs claim, the Court did not address the state-created danger doctrine. Indeed, its reasoning suggests that its decision might have been different had the plaintiff alleged a specific state-created danger due process claim. The Court explained that the plaintiff did “not claim that the city or any of its agents deliberately harmed her husband” and did “not even allege that [her husband’s] supervisor instructed him to go into the sewer when the supervisor knew or should have known that there was a significant risk that he would be injured.” Id. at 125,112 S.Ct. 1061.
Recognizing Plaintiffs’ authority to bring a state-created danger claim in this workplace safety case also accords with the general rule under due process doctrine. The general rule is that a state actor is not hable for his omissions or failure to act. *1124 See Collins, 503 U.S. at 126, 112 S.Ct. 1061; see also DeShaney, 489 U.S. at 196, 109 S.Ct. 998 (“[T]he Due Process Clauses generally confer no affirmative right to governmental aid.”); Campbell, 671 F.3d at 842 (“It is well established that although the Constitution protects a citizen’s liberty interest in her own bodily security, the state’s failure to protect that interest does not violate the Fourteenth Amendment.” (internal citation omitted)). The state-created danger doctrine is a recognized “exception” to this general rule. Patel, 648 F.3d at 972. In holding that the government had no affirmative obligation to provide a safe workplace, Collins appears to be an application of this general rule. It follows that the exceptions to the general rule, such as the state-created danger doctrine, should also apply to workplace safety cases.
Support for this conclusion comes from Grubbs I, in which we sustained a plaintiffs state-created danger claim even though it arose in the workplace. In Grubbs I, a case decided six months after Collins, a registered nurse working in an Oregon prison was raped by an inmate. The nurse brought a § 1983 action against her supervisors, and we held that she had stated a due process claim under the state-created danger doctrine. Defendants had assigned the particular inmate to work with the nurse even though they knew that (1) the inmate had a history of violence against women and was likely to assault a woman, (2) the nurse was likely to be alone with the inmate during her rounds, and (3) the nurse had not been informed at her hiring that she would be left alone with violent offenders. Grubbs I, 974 F.2d at 121. We distinguished Collins, writing that “[u]nlike Collins, [the nurse] alleges that the Defendants took affirmative steps to place her at significant risk.” Id. at' 122. We rejected the defendants’ contention that the nurse’s “status as a state employee should bar her claim.” Id.
Other courts agree that Collins does not foreclose application of the state-created danger exception in workplace safety cases. See Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ., 542 F.3d 529, 537 (6th Cir.2008) (noting that an employee can prevail against his or her employer, notwithstanding Collins, in state-created danger cases); Kaucher v. County of Bucks, 455 F.3d 418, 424-25, 431 (3d Cir.2006) (treating plaintiffs’ state created danger doctrine claim as separate and distinct from Collins); Ramos-Pinero v. Puerto Rico, 453 F.3d 48, 55 n.9 (1st Cir.2006) (assuming the state-created danger doctrine could be a theory of liability notwithstanding Collins, but rejecting plaintiffs’ claim on the merits); Gormley, 93 A.3d at 362-63 (concluding that the defendants were not entitled to qualified immunity, rejecting the defendants’ reliance on Collins, and holding that the state-created danger doctrine applied). But see Slaughter v. Mayor & City Council of Baltimore, 682 F.3d 317, 321-23 (4th Cir.2012) (holding that Collins barred a plaintiffs claim against a fire department, even though plaintiff raised a state-created danger claim).
4. Applying the State-Created Danger Exception to the Facts of This Case
To prevail on a state-created danger due process claim, a plaintiff must show more than merely a failure to create or maintain a safe work environment. First, a plaintiff must show that the state engaged in “affirmative conduct” that placed him or her in danger. Patel, 648 F.3d at 974. This “affirmative conduct” requirement has several components. A plaintiff must show not only that the defendant acted “affirmatively,” but also that the affirmative conduct placed him in a “worse position than that in which he would have been had [the state] not acted at all.” Johnson, 474 F.3d *1125 at 641 (quoting DeShaney, 489 U.S. at 201, 109 S.Ct. 998); accord Kennedy, 439 F.3d at 1063. The affirmative act must have exposed the plaintiff to “an actual, particularized danger,”’ Kennedy, 439 F.3d at 1063, and the resulting harm must have been foreseeable, see Lawrence, 340 F.3d at 957. Second, the state actor must have acted with “deliberate indifference” to a “known or obvious danger.” Patel, 648 F.3d at 974 (quoting L.W. v. Grubbs (Grubbs II), 92 F.3d 894, 900 (9th Cir. 1996)). “Deliberate indifference” requires a “culpable mental state” more than “gross negligence.” Id.; see Grubbs II, 92 F.3d at 898.
Plaintiffs’ evidence, if true, satisfies both elements of a state-created danger claim. First, Pauluk’s 2003 transfer back to Shadow Lane was “affirmative” conduct. Pauluk clearly did not want to return to Shadow Lane and was transferred “involuntarily.” There is sufficient evidence in the record that either or both Wojcik and Savage were sufficiently involved in the decision to transfer that a reasonable jury could conclude they should bear some responsibility for that transfer. Further, the 2003 transfer back to Shadow Lane placed Pauluk in a “worse position” than before. Only after the transfer did Pauluk begin to suffer from mold-related health problems. The harm that Pauluk suffered was foreseeable, as Pauluk had opposed the transfer specifically on the ground that he feared he would become ill due to toxic mold exposure.
Second, construing the facts in the light most favorable to Plaintiffs, Wojcik and Savage .acted with deliberate indifference in exposing Pauluk to a known and obvious danger. Plaintiffs presented evidence that Wojcik and Savage were both aware of the CCHD’s long and tortured history of pervasive mold problems in multiple buildings, including the Shadow Lane facility. Plaintiffs’ evidence also suggests that Wojcik and Savage were on notice of the potential health problems associated with mold exposure, as Pauluk protested his transfer on mold-related grounds and at least one other employee working at Shadow Lane had previously suffered harmful health effects from mold exposure. Further, Plaintiffs presented evidence that Wojcik and Savage actively tried to conceal the amount of, and danger posed by, the mold. This evidence would support a reasonable.jury’s finding that Wojcik and Savage acted with deliberate indifference toward the danger posed by toxic mold in Shadow Lane to Pauluk’s health.
B. Clearly Established Law
Although we conclude that Plaintiffs presented sufficient evidence to show a due process violation under the state-created dánger doctrine,'qualified immunity shields Wojcik and Savage from a § 1983 damages suit unless Pauluk’s due process right was “clearly established at the time of the violation.” Espinosa v. City & County of San Francisco, 598 F.3d 528, 532 (9th Cir.2010). We conclude that the right was not clearly' established, and that Wojcik and Savage are therefore entitled to qualified immunity.
Plaintiffs argue that Pauluk’s constitutional rights were clearly established by our decisions in Wood and Grubbs I. We easily conclude that Wood does not clearly establish the due- process right that Plaintiffs assert. As mentioned above, in Wood we held that a police officer could be liable for a rape that occurred after he abandoned the plaintiff in a high crime area in the middle of the night. The core question in this appeal is whether Collins bars the application of the state-created danger doctrine in cases where the danger is a physical condition in the workplace. Because Wood did not involve a dangerous *1126 workplace, it does not speak to this question.
Grubbs I presents a closer analogy to this case. However, as recounted above, the danger in Grubbs I was a human actor who posed a known threat. In contrast, Pauluk was not harmed by a human agent, but rather by a physical condition in the building where he worked. This case is factually very similar to Collins, where, as here, the danger was a physical danger in the workplace. For the reasons given above, we conclude that Plaintiffs have stated a claim despite the fact that Pau-luk’s injury was caused by physical conditions in the workplace. But, because the Supreme Court in Collins declined to find a due process violation in a case with very similar facts, we cannot say that Wojcik and Savage were “on notice” that their conduct was unlawful under clearly established law. Hope v. Pelzer, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).
C. Remaining Monell Claim
The CCHD, a county agency, was not party to this interlocutory appeal and remains a defendant. A county agency is not entitled to qualified immunity and may be held liable for constitutional violations by its employees under Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and related cases. We express no view on the possible Monell liability of the CCHD under the state-created danger doctrine, leaving that question to the district court in the first instance.
Conclusion
We hold that the state-created danger doctrine is a viable theory of due process liability under § 1983, even in workplace environments. However, in light of the factual similarity between this case and Collins, we hold that the district court erred in denying qualified immunity to Wojcik and Savage. We reverse and remand for further proceedings consistent with this opinion.
REVERSED and REMANDED.