**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAR 16 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| LUPITA CHAVEZ, | No. 21-16094 |
| Plaintiff-Appellee, | D.C. No. 5:18-cv-02252-LHK |
| and | |
| LIFE SAVERS CONCEPTS ASSOCIATION OF CALIFORNIA; et al., | MEMORANDUM[*] |
| Plaintiffs, | |
| v. | |
| ROAHN WYNAR, | |
| Defendant-Appellant, | |
| and | |
| ALICIA COX; FEDERAL BUREAU OF INVESTIGATION, | |
| Defendants. | |

Appeal from the United States District Court
for the Northern District of California
Lucy H. Koh, District Judge, Presiding

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Argued and Submitted December 8, 2022
San Francisco, California

Before: WATFORD and SANCHEZ, Circuit Judges, and BENITEZ,[**] District Judge.
Dissent by Judge SANCHEZ.

Lupita Chavez contends that Roahn Wynar violated the Fourth Amendment when he denied her access to her cell phone during a *Summers*-type detention. *See Michigan v. Summers*, 452 U.S. 692, 701–06 (1981). The district court denied Wynar's motion for summary judgment based on qualified immunity because it found that there was "a genuine dispute of material fact as to the length of time that [Chavez] was deprived of her cell phone." But even if we assume that Chavez's timeline is the correct one, Wynar is still entitled to qualified immunity under the second prong of the analysis. *See Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009). We therefore reverse and remand.

To determine whether the denial of qualified immunity was appropriate, we must adopt the non-moving party's version of the facts. *See Jeffers v. Gomez*, 267 F.3d 895, 903 (9th Cir. 2001). Chavez alleges that, while executing a search of the Life Savers Concepts Association office, law enforcement agents detained her and three other occupants in the office's main room for up to 40 minutes before

---

[**] The Honorable Roger T. Benitez, United States District Judge for the Southern District of California, sitting by designation.

moving them into a small lobby at the front of the building. Once in the lobby, Wynar ordered the detainees not to use their cell phones. After 30 to 40 minutes in the lobby, Wynar released Chavez, along with two of the other detainees, but insisted that the office manager remain.

Accepting these facts as true, we assume without deciding that Wynar violated Chavez's Fourth Amendment rights by denying her access to her cell phone for one hour and 20 minutes. At the second step of the qualified immunity analysis, however, we conclude that the law regarding the denial of phone access was not clearly established.

Under the balancing approach that governs in this context, we have held that officers acted unreasonably in denying telephone access during a *Summers*-type detention only once before. *See Ganwich v. Knapp*, 319 F.3d 1115 (9th Cir. 2003). In *Ganwich*, the officers held a group of employees incommunicado for time periods ranging from one hour and 45 minutes to four hours and 45 minutes, and they made the detainees' release conditional on submitting to interrogation. *Id.* at 1118. We concluded that this conduct was constitutionally unreasonable because, "[e]ven if at the start the officers had [a legitimate] interest in preventing the plaintiffs from making a telephone call, the officers' interest was soon outweighed by the plaintiffs' stronger interests in contacting relatives." *Id.* at 1123. We noted

in particular that several employees needed to use the phone during their detention to arrange childcare. *Id.*

This case differs from *Ganwich* in two important ways. First, Wynar denied Chavez phone access for one hour and 20 minutes, which is significantly shorter than the longest of the time periods involved in *Ganwich* and nearly half an hour shorter than the minimum length of time at issue in *Ganwich*. Further, *Ganwich* did not establish a bright-line limit on the length of time that an officer can deny phone access during a *Summers*-type detention. It instead recognized that this is a multifactor analysis that weighs the particular law-enforcement and privacy interests involved in a given case. *Id.* at 1122–23. Second, in *Ganwich* we indicated that the privacy interests there were weighty because the plaintiffs expressed a compelling need to use their phones. *Id.* at 1123–24. Here, there is no evidence in the record that Chavez sought to use her phone at all. Given these differences and the fact-intensive nature of the balancing approach, we conclude that the contours of the right were not sufficiently clear to put a reasonable officer on notice that denying Chavez phone access during her detention crossed a constitutional line. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Chavez contends that the similarities outweigh these differences because, as in *Ganwich*, Wynar's true purpose in denying phone access was to coerce the office manager into cooperating with the investigation. However, this invitation to

probe Wynar's intent is in tension with the objective approach that *Ganwich* employed to determine whether the officers in that case conducted the *Summers*-type detention in a reasonable manner. 319 F.3d at 1122 n.13. In *Ganwich*, the officers' actions—which included explicitly telling the employees that they could not leave until they submitted to interviews—provided objective evidence that the officers were holding the employees incommunicado to coerce interrogations. *Id.* at 1118. We lack equivalent objective evidence here.

*Ganwich* therefore did not place the constitutional question presented here "beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Accordingly, even if Wynar unreasonably denied Chavez phone access during her detention, he is entitled to qualified immunity under the second prong of the analysis.

**REVERSED and REMANDED.**

*Chavez v. Wynar*, 21-16094

SANCHEZ, J., dissenting:

Lupita Chavez alleges that Special Agent Wynar violated her Fourth Amendment rights when she was detained incommunicado for one hour and twenty minutes during the execution of a search warrant at Life Savers Concepts Association ("Life Savers").[1] If this case only involved the length of time Lupita was deprived of her cell phone, I would concur in the Court's determination that Wynar is entitled to qualified immunity as a matter of law. But Lupita presented evidence sufficient to demonstrate that the search warrant was obtained as a tactical ruse to coerce the office manager to submit to interrogation, and that government agents conducted the search in an objectively unreasonable manner. Because the law was clearly established that law enforcement agents cannot unduly prolong a detention or employ other coercive means to induce an interrogation, I would affirm the district court's denial of Wynar's motion for summary judgment. I respectfully dissent.

I.

We apply a two-part analysis in qualified immunity cases. "First, a court must determine whether—resolving all disputes of fact and credibility in favor of

---

[1] As two of the plaintiffs in the underlying action share the same last name, I utilize their first names to avoid any confusion.

1

the party asserting the injury—the facts adduced at summary judgment show that the officer's conduct violated a constitutional right." *Pauluk v. Savage*, 836 F.3d 1117, 1121 (9th Cir. 2016) (citing *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1060 (9th Cir. 2006)). Second, "if the court determines that the conduct did violate a constitutional right, [the] second prong requires the court to determine whether, at the time of the violation, the constitutional right was 'clearly established.'" *Id.* (alteration in original).

*Michigan v. Summers* permits law enforcement officials executing a search warrant for contraband "to detain the occupants of the premises while a proper search is conducted." 452 U.S. 692, 705 (1981); *see also Bailey v. United States*, 568 U.S. 186, 200 (2013). While the authority to detain incident to a search is categorical, *Muehler v. Mena*, 544 U.S. 93, 98 (2005), the Supreme Court has made clear that such detentions must be conducted in an objectively reasonable manner under the Fourth Amendment. *See Los Angeles Cty. v. Rettele*, 550 U.S. 609, 614–15 (2007) (recognizing "excessive force or restraints," "prolonged detention," or other "special circumstances" may render a search or seizure unreasonable); *Summers*, 452 U.S. at 701 (analyzing whether the detention was "likely to be exploited by the officer or unduly prolonged in order to gain more information" from the detention rather than a search of the premises).

This Court has also analyzed the reasonableness of a *Summers* detention under a balancing approach, observing that "[t]he scope of a detention 'must be carefully tailored to its underlying justification.'" *Ganwich v. Knapp*, 319 F.3d 1115, 1122 (9th Cir. 2003) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983). In *Ganwich*, we upheld the initial detention of employees in an office waiting room because the law enforcement officers' interests in facilitating a safe and efficient search outweighed the plaintiffs' privacy rights. *Id.* at 1120. However, the officers' conduct strayed "from fair to foul" when they prolonged the detention, refused to allow the plaintiffs to make phone calls to arrange for the care of their children, and conditioned plaintiffs' release from detention on their submission to interrogation. *Id.* at 1122–24. We concluded that "[b]ecause the interrogations of the plaintiffs were not carefully tailored to the detention's underlying justification, the detention was more intrusive than necessary," rendering the detentions unlawful. *Id.* at 1122.

In *Perez Cruz v. Barr*, 926 F.3d 1128, 1143 (9th Cir. 2019), we held that *Summers*'s "categorical authority to detain incident to the execution of a search warrant does not extend to a preexisting plan whose central purpose is to detain, interrogate, or arrest a large number of individuals, without individualized reasonable suspicion." Immigration agents had obtained a warrant to search a warehouse for employment records as a tactical ruse to interrogate the employees

3

about their immigration status. *Id.* at 1141. We reasoned that *Summers* provides a limited exception for the seizure of persons without individualized suspicion or probable cause, but "[w]here 'a safe and efficient search' is not the primary purpose of an officers' actions, *Summers*'s justification for bypassing the Fourth Amendment's traditional protections disappears." *Id.* (quoting *Bailey*, 568 U.S. at 200 (2013)).

Sufficient evidence has been adduced to establish a violation of Lupita's Fourth Amendment rights under *Ganwich* and *Perez Cruz*. Lupita asserts that the primary purpose of the search warrant was to detain and interrogate individuals at Life Savers, not to conduct a search of the premises. Wynar testified that he obtained the search warrant as a "light-handed" "tactical ruse." Other evidence supports Lupita's contention that Wynar's plan was centered on detaining and interrogating Raquel. Wynar abruptly released Lupita and the male volunteers after holding them incommunicado for one hour and twenty minutes, he continued to detain and interrogate Raquel for two more hours after releasing the others, and his search of the office ended as soon as Raquel ended her interview with agents.[2]

---

[2] After forty minutes in the lobby, Lupita asked, "Are we or anybody under arrest?" Wynar stated they were not. Lupita then questioned why the two male volunteers were handcuffed "if nobody's under arrest?" Wynar responded "I forgot" and released Lupita and the male volunteers. Pointing to Raquel, he said, "You stay. You have questions to answer." Raquel was interrogated for two more hours. The questioning ended when one of the volunteers brought a phone to

4

As *Perez Cruz* observed, "the authority granted by *Summers* 'must not diverge from its purpose and rationale.'" *Perez Cruz*, 926 F.3d at 1143 (quoting *Bailey*, 568 U.S. at 194). Because Lupita's seizure was not a permissible *Summers* detention, and the Government offers no other basis for Lupita's suspicionless detention, the evidence demonstrates a violation of the Fourth Amendment. *See id.* at 1145.

Plaintiffs' evidence also demonstrates that the officers prolonged Lupita's detention and employed objectively unreasonable tactics. Twenty-six agents descended on Life Savers, guns drawn, to conduct a "low-risk" search of a business office. Lupita, who had emerged from a shower half-dressed, was not permitted by Wynar to put her clothes on. Raquel's request to use the restroom was also denied by Wynar. She later wet herself. The Government does not explain how requiring Lupita to remain partially unclothed for some time, prohibiting Raquel from using the restroom, or denying plaintiffs' repeated requests to see the search warrant served any governmental interests.

Plaintiffs' detention continued well beyond the time required by agents to secure the office and identify that it was nearly empty of records. The premises were secured in approximately fifteen minutes and yet the plaintiffs were detained

Raquel, who called her attorney and was directed to stop answering agents' questions.

5

incommunicado for approximately one hour and twenty minutes. Lupita points out that denying access to her cell phone served the Government's efforts to induce an interrogation from Raquel. Earlier access to her phone might have led to an earlier phone call to an attorney and a premature end to the Government's interrogation efforts, as occurred hours later. Viewing the evidence in the light most favorable to Lupita, the scope and intrusiveness of her detention exceeded the Government's legitimate interests in conducting a safe and efficient search. *See Florida*, 460 U.S. at 504; *Ganwich*, 319 F.3d at 1122.

## II.

I would also conclude that it was clearly established that law enforcement agents cannot prolong a detention or employ coercive means to induce detainees to submit to an interrogation.[3] "The relevant inquiry in determining whether a right was clearly established is whether it would be clear to a reasonable officer that his or her conduct was unlawful in the situation confronted." *Ganwich*, 319 F.3d at 1124. *Ganwich* held that "a reasonable officer would have known that . . . the Constitution prohibits officers from using the threat of continued detention to coerce detainees to submit to interrogation and prohibits officers from holding people incommunicado for an extended length of time without justification." *Id.*

---

[3] Because *Perez Cruz* issued after the search in question, I do not rely on this precedent in analyzing the second prong of qualified immunity.

6

A reasonable officer would also understand that the Constitution prohibits officers from using other objectively unreasonable methods, short of explicit threats, to coerce detainees into interrogation. *Id.* Wynar's allegedly unreasonable actions included forcing Lupita to remain partially disrobed without justification, prolonging her detention for reasons unrelated to the search of the Life Savers premises, and detaining her incommunicado for an extended period as a means of facilitating an interrogation. A reasonable officer would have recognized that a seizure under those circumstances is significantly more intrusive than is necessary. *Id.* at 1125; s*ee also Rettele*, 550 U.S. at 614–15; *Summers*, 452 U.S. at 701. Accordingly, I would affirm the district court's denial of Wynar's motion for summary judgment.