**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ESTATE OF WAYNE STEVEN
ANDERSON,
                *Plaintiff-Appellee*,

v.

JOHN MARSH, California Highway
Patrol Officer,
                *Defendant-Appellant.*

No. 19-15068

D.C. No.
1:14-cv-01599-
TLN-SAB

OPINION

Appeal from the United States District Court
for the Eastern District of California
Troy L. Nunley, District Judge, Presiding

Argued and Submitted January 8, 2020
San Francisco, California

Filed January 15, 2021

Before: William A. Fletcher and Michelle T. Friedland,
Circuit Judges, and Timothy Hillman,* District Judge.

Opinion by Judge Friedland;
Dissent by Judge W. Fletcher

---

*The Honorable Timothy Hillman, United States District Judge for
the District of Massachusetts, sitting by designation.*

## SUMMARY[**]

### Civil Rights

The panel dismissed, for lack of jurisdiction, an interlocutory appeal from the district court's order, on summary judgment, denying qualified immunity to California Highway Patrol Officer John Marsh in an action brought pursuant to 42 U.S.C. § 1983 alleging Marsh used excessive force when he shot Wayne Anderson.

The panel determined that the crux of Marsh's appeal was that the district court "erred in finding disputed issues of material fact" concerning whether Anderson made a sudden movement as though he were reaching for a weapon. Applying the rule articulated in *Foster v. City of Indio*, 908 F.3d 1204 (9th Cir. 2018), *Pauluk v. Savage*, 836 F.3d 1117 (9th Cir. 2016), and *Advanced Building & Fabrication, Inc. v. California Highway Patrol*, 918 F.3d 654 (9th Cir. 2019), the panel concluded that it lacked jurisdiction over the appeal because, in light of his concessions at oral argument, Marsh challenged only the district court's determination that there was a genuine factual dispute as to whether Anderson appeared to reach for a weapon before Marsh shot him. Rather than arguing that, taking the facts in the light most favorable to Anderson's Estate, the law was not clearly established that Marsh's conduct was unconstitutional— which the panel would have had jurisdiction to consider— Marsh contested whether there was enough evidence in the record for a jury to conclude that a certain fact favorable to

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the Estate was true, which the panel did not have jurisdiction to resolve. Because it could not review on interlocutory appeal the question of evidence sufficiency Marsh raised, the panel dismissed his appeal for lack of jurisdiction.

Dissenting, Judge W. Fletcher stated that he was sympathetic with the panel majority, for the law in this area is extraordinarily confused. However, Marsh did not dispute that he was at the scene. Indeed, he conceded that he shot Anderson. Therefore, under *Plumhoff v. Rickard*, 572 U.S. 765 (2014), and other case law, the panel had jurisdiction to hear this appeal. Judge Fletcher closed his dissent with a plea to the Supreme Court to state clearly, in an appropriate case, whether and in what circumstances an interlocutory appeal may be taken when the district court, viewing disputed evidence in the light most favorable to plaintiff, has denied a motion for summary judgment based on qualified immunity.

## COUNSEL

Kymberly E. Speer (argued) and Wilfred Fong, Deputy Attorneys General; Jeffrey R. Vincent, Supervising Deputy Attorney General; Danielle F. O'Bannon, Senior Assistant Attorney General; Xavier Becerra, Attorney General of California; Office of the Attorney General, Oakland, California; for Defendant-Appellant.

Adam Carlson (argued), Casper, Meadows, Schwartz & Cook, Walnut Creek, California; Karen L. Snell, San Francisco, California; for Plaintiff-Appellee.

## OPINION

FRIEDLAND, Circuit Judge:

The Estate of Wayne Steven Anderson brought this action under 42 U.S.C. § 1983 alleging that California Highway Patrol Officer John Marsh used excessive force against Anderson in violation of the Fourth Amendment. Marsh moved for summary judgment based on qualified immunity. The district court denied Marsh's motion, and he filed this interlocutory appeal. Because Marsh's interlocutory appeal challenges only the district court's conclusion that there is sufficient evidence to create a genuine dispute as to the factual question that will determine whether Marsh's use of force was reasonable, we lack jurisdiction to review his arguments. We therefore dismiss this appeal.

## I.

### A.

In the early afternoon of October 27, 2012, while on patrol in the Fresno area, California Highway Patrol ("CHP") Officer John Marsh saw a Toyota Camry driving westbound on State Route 180 at 70 miles per hour.[1] Marsh followed the car and radioed dispatch to report that he was going to "attempt[] to overtake a high-speed vehicle." Shortly after Marsh began following the Camry, its driver,

---

[1] Marsh stated at various points that Anderson's speed was 70, 90, and 100 miles per hour. Because this appeal arises from the denial of Marsh's motion for summary judgment, we relate the version of the facts most favorable to Anderson's Estate, the non-moving party, unless otherwise indicated. *See Foster v. City of Indio*, 908 F.3d 1204, 1207 (9th Cir. 2018).

later identified as Wayne Steven Anderson, merged onto State Route 99 northbound.  Marsh testified in his later deposition that, at around this point, he activated his patrol car's overhead lights.  Anderson took an off-ramp at 70 miles per hour, drove through a stop sign, and reentered Route 99.  He then took the next off-ramp, again traveling at a speed that Marsh estimated at 70 miles per hour.  Anderson drove through a T-intersection, lost control of his car while attempting to turn, and crashed into a chain-link fence. Approximately three minutes had passed between the start of Marsh's pursuit and the crash.

A few seconds after Anderson crashed into the fence, Marsh stopped his patrol car right behind the Camry. Anderson remained in the Camry.  Marsh immediately exited his car and drew his service weapon.  He heard the engine of the Camry revving and saw the car rocking forward and backward as if Anderson were attempting to dislodge it from the chain-link fence.  Marsh testified that he ordered Anderson to stop.  Marsh then approached the driver's side of the Camry and pointed his weapon at Anderson.  Marsh saw Anderson's left hand on the steering wheel and his right hand on the gear shift.

According to Marsh's disputed deposition testimony, he ordered Anderson to "[s]top the car" and "[s]how me your hands."  Marsh further testified that Anderson suddenly stopped rocking the car, took his hands off the steering wheel and gear shift, and reached toward the front passenger seat or floorboard.  Marsh later stated that he feared Anderson was reaching for a weapon.

It is undisputed that Marsh then fired two rounds.  One bullet penetrated the Camry's closed window, struck Anderson, and permanently paralyzed him from the chest down.  The other bullet hit the Camry's door frame.  Marsh

had not warned Anderson that he was going to shoot before firing.

Marsh radioed dispatch to report shots fired. One segment of the recording of his dispatch is difficult to understand but was transcribed by CHP as including the phrase "[h]e ran into my car." Marsh did not mention that Anderson may have been armed.

Other officers arrived on the scene within a minute. Marsh did not alert anyone about the possible presence of a weapon in the Camry, and no weapon was ever recovered. One of the responding officers later testified that he believed that Marsh said he fired his weapon because he thought Anderson "was trying to run him over." This officer did not recall Marsh expressing a fear that Anderson had a weapon.

Although Marsh's vehicle had a dashboard camera, subsequent investigation revealed that it had not recorded the incident. A blurry surveillance video (without accompanying audio) from a nearby business captured Anderson's crash, the relative positions of Anderson's and Marsh's vehicles, and Marsh's approach to the Camry, but not the Camry's interior. Marsh was interviewed by the Fresno Police Department later on the day of the shooting. The interviewers showed him the surveillance video before questioning him about what had occurred.[2]

---

[2] CHP's designated person most knowledgeable about its investigation into this incident testified that he was not aware of any other instance in which a CHP officer involved in a shooting was permitted to view a video of the shooting before being interviewed by investigators.

**B.**

Anderson filed this action against Marsh in the United States District Court for the Eastern District of California. Anderson died "of causes not directly related" to the shooting several months later, before he ever testified about the events at issue. His Estate took over the litigation. Marsh moved for summary judgment. The Estate thereafter stipulated to dismissal of all claims asserted in the Complaint except the excessive force claim. As to that remaining claim, Marsh asserted the defense of qualified immunity.

The district court denied Marsh's motion for summary judgment. The court identified several aspects of the evidentiary record that undercut Marsh's testimony that Anderson made a sudden, threatening movement toward the passenger side of his car. The court's observations included that no weapon was recovered from Anderson's car; that "Marsh did not report a possible weapon to other officers who arrived on the scene"; and that when Marsh reported the shooting to dispatch, he said something transcribed as "[h]e ran into my car," without mentioning that Anderson may have been armed. As the court summarized, on the Estate's version of the facts in the record, "Anderson was sitting, unarmed, in the driver seat of his car, which was stuck on a chain link fence [and] had already stopped rocking back and forth, and Anderson had one hand on the steering wheel and the other [hand] on the gear-shift" at the time he was shot.

The district court thus reasoned that, "[v]iewing all disputed facts in the light most favorable to [the Estate], as [required] on a motion for summary judgment, a reasonable jury could conclude that Anderson did not make a sudden, furtive reach for the passenger side of the car." The court held that "if a jury finds that Anderson did not reach for the passenger side," there would have been a "lack of imminent

threat to Officer Marsh or others," so the jury could find "Officer Marsh's use of deadly force . . . was excessive." The court further held, quoting *Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir. 2010), that caselaw at the time of the incident "clearly established that an officer may not use deadly force to apprehend a suspect where the suspect poses no immediate threat to the officer or others." The court accordingly held that Marsh was not entitled to qualified immunity at the summary judgment stage of the litigation.

Marsh timely filed this interlocutory appeal. The crux of Marsh's appeal is that the district court "erred in finding disputed issues of material fact" concerning whether Anderson made a "sudden movement as though he were reaching for a weapon." Marsh asserts that there is not sufficient evidence for a jury to find for the Estate on this question because "[t]here is no evidence directly contradicting [his] testimony that Anderson made a furtive movement." Marsh accordingly argues that, for purposes of evaluating whether he was entitled to qualified immunity, the district court should have accepted as true his account of Anderson's actions. At oral argument, Marsh's counsel conceded that the qualified immunity analysis turns on "[w]hether Officer Marsh reasonably perceived that [Anderson] was making a threatening movement," and that it was "clearly established" that it would not have been lawful for Marsh to shoot "[i]f the jury d[oes] not believe that [Anderson's] hands ever moved."

## II.

## A.

The parties dispute whether we have jurisdiction over this interlocutory appeal. An order denying a motion for summary judgment is usually not an immediately appealable

final decision. *Plumhoff v. Rickard*, 572 U.S. 765, 771 (2014); *see* 28 U.S.C. § 1291. "But that general rule does not apply when the summary judgment motion is based on a claim of qualified immunity," because "pretrial orders denying qualified immunity generally fall within the collateral order doctrine." *Plumhoff*, 572 U.S. at 771–72. Thus, in the qualified immunity context, we typically have jurisdiction over interlocutory appeals from the denial of summary judgment. *Foster v. City of Indio*, 908 F.3d 1204, 1209 (9th Cir. 2018).

"[T]he scope of our review" in this context, however, is "circumscribed." *Id.* at 1210 (quoting *George v. Morris*, 736 F.3d 829, 834 (9th Cir. 2013)). In *Johnson v. Jones*, 515 U.S. 304 (1995), the Supreme Court explained that any "portion of a district court's summary judgment order that, though entered in a 'qualified immunity' case, determines only a question of 'evidence sufficiency,' *i.e.*, which facts a party may, or may not, be able to prove at trial . . . is not appealable." *Id.* at 313. By contrast, any portion of a summary judgment order that turns on "the application of 'clearly established' law to a given (for appellate purposes undisputed) set of facts" is immediately appealable. *Id.*

We have understood *Johnson* to mean "[a] public official may not immediately appeal 'a *fact*-related dispute about the pretrial record, namely, whether or not the evidence in the pretrial record was sufficient to show a genuine issue of fact for trial.'" *Foster*, 908 F.3d at 1210 (quoting *Johnson*, 515 U.S. at 307); *see also George*, 736 F.3d at 835 (underscoring that we may not review on interlocutory appeal "the question whether there is enough evidence in the record for a jury to conclude that certain facts are true"). Our interlocutory review jurisdiction is limited to resolving a defendant's "purely legal . . . contention that [his or her]

conduct 'did not violate the [Constitution] and, in any event, did not violate clearly established law.'" *Foster*, 908 F.3d at 1210 (quoting *Plumhoff*, 572 U.S. at 773); *see also George*, 736 F.3d at 836 ("[W]e are confined to the question of 'whether the defendant[] would be entitled to qualified immunity as a matter of law, assuming all factual disputes are resolved, and all reasonable inferences are drawn, in plaintiff's favor." (quoting *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1068 (9th Cir. 2012))).[3]

These cases instruct that whether jurisdiction is lacking under our court's interpretation of *Johnson* ultimately turns on the nature of the defendant's argument on appeal.  If the

---

[3] Although we may not review on interlocutory appeal claims that a plaintiff has presented insufficient evidence, we have held that we may review claims that a plaintiff has presented *no* evidence such that his arguments about the illegality of a defendant's conduct are premised on "bare *allegation[s]*." *Foster*, 908 F.3d at 1217; *id.* at 1217–18 (holding, on interlocutory review, that "the district court erred in finding a genuine dispute" of fact as to whether the defendant officer approached the plaintiff with his gun drawn because the plaintiff's "bare *allegation* alone, without any *evidence* in the record, is insufficient to conclude that [the officer] did anything more than unholster his gun"); *Jeffers v. Gomez*, 267 F.3d 895, 907 (9th Cir. 2001) (determining that there was jurisdiction to review and reverse the district court's holding that the defendants' motive was in dispute when there was "*no evidence* of bad motive," even when the record was "viewed in the light most favorable to the plaintiff").

Similarly, we have recognized that the Supreme Court's decision in *Scott v. Harris*, 550 U.S. 372 (2007), created a narrow additional avenue for a defendant to argue that a plaintiff's version of the facts is "blatantly contradicted by the record, so that no reasonable jury could believe it." *Orn v. City of Tacoma*, 949 F.3d 1167, 1171 (9th Cir. 2020) (quoting *Scott*, 550 U.S. at 380).  In *Scott* itself, for example, the Court justified its rejection of the plaintiff's factual allegations by noting that a videotape of the events in question "quite clearly contradict[ed] the version of the story told by [the plaintiff]."  550 U.S. at 378.

defendant argues only that the evidence is insufficient to raise a genuine issue of material fact, we lack jurisdiction. If the defendant's appeal raises purely legal questions, however, such as whether his alleged conduct violated clearly established law, we may review those issues. In other words, we have jurisdiction to review an issue of law determining entitlement to qualified immunity—even if the district court's summary judgment ruling also contains an evidence-sufficiency determination—but not to accede to a defendant's request that we review that evidence-sufficiency determination on appeal.

Our dissenting colleague describes the Supreme Court's caselaw on the scope of interlocutory appeals in the qualified immunity context as having spawned "persistent confusion," and understands the prevailing rule to be different than the one we have outlined above. Dissent at 21–22. Specifically, the dissent interprets the discussion of *Johnson* in *Plumhoff* as indicating that we always have jurisdiction over an interlocutory appeal from the denial of qualified immunity, with one narrow exception:

> Only when officers provide disputed evidence showing that they were not present, and were in no way involved in the challenged conduct [as the defendant officers in *Johnson* were not], is an appellate court without jurisdiction to hear the officers' interlocutory appeal.

Dissent at 31; *see Johnson*, 515 U.S. at 307–08. In other words, the dissent reads *Plumhoff* as implicitly restricting *Johnson* to its facts. *See* Dissent at 31.

We agree with the dissent that the Supreme Court's explication of the relevant jurisdictional principles has not

always been clear, and that *Plumhoff* contains language that supports the dissent's reading.  But there is also language in *Plumhoff* that suggests the Court did not read *Johnson* so narrowly.   *Plumhoff* reiterated that *Johnson* barred an interlocutory appeal from a summary judgment order that turned on "a question of 'evidence sufficiency,' *i.e.*, which facts a party may, or may not, be able to prove at trial." *Plumhoff*, 572 U.S. at 772 (quoting *Johnson*, 515 U.S. at 313).  The Court also emphasized the difference between "legal issues" and "purely factual issues that the trial court might confront if the case were tried," explaining with approval that *Johnson* had held that "forcing appellate courts to entertain [interlocutory] appeals" concerning factual determinations of "evidence sufficiency" would "impose an undue burden."  *Id.* at 773.

Those passages have already persuaded our court to adopt a different interpretation of the limits on interlocutory appellate jurisdiction than the dissent's.  Our post-*Plumhoff* decisions have continued to understand *Johnson* as setting forth a jurisdictional rule about challenges to evidence sufficiency, without confining the rule to situations in which officers deny having been involved in the challenged conduct.  For example, we stated in *Foster* that "'a portion of a district court's summary judgment order' in a qualified immunity case [that] 'determines only a question of "evidence sufficiency," *i.e.*, which facts a party may, or may not, be able to prove at trial,'" is not immediately appealable. 908 F.3d at 1210 (quoting *Johnson*, 515 U.S. at 313).  We similarly said in *Advanced Building & Fabrication, Inc. v. California Highway Patrol*, 918 F.3d 654 (9th Cir. 2019), that "[w]e may not consider 'a fact-related dispute about the pretrial record,' that is, 'whether or not the evidence in the pretrial record was sufficient to show a genuine issue of fact for trial.'"  *Id.* at 657 (quoting *Johnson*, 515 U.S. at 307); *see*

*also, e.g.*, *Pauluk v. Savage*, 836 F.3d 1117, 1121 (9th Cir. 2016) (same).[4]

To the extent these cases involved arguments on interlocutory appeal that boiled down to factual disputes about the record, we applied *Johnson* to hold that we lacked jurisdiction over such arguments—even when the factual disputes did not concern whether the defendants were involved in the allegedly unlawful conduct. For instance, the defendant in *Foster*, Officer Hellawell, conducted an investigatory stop of Foster and subsequently shot him. 908 F.3d at 1207–09. The district court held that Hellawell was not entitled to qualified immunity from claims that he stopped Foster unlawfully and used excessive force twice throughout the encounter. *Id.* at 1209. As to one of the excessive force claims, Hellawell argued on interlocutory appeal that Foster's family "w[ould] not be able to prove at trial" that Foster was unarmed and moving away from Hellawell at the time of the shooting. *Id.* at 1213. We concluded that we lacked jurisdiction to review this argument because "Hellawell challenge[d] the sufficiency of the plaintiffs' evidence." *Id.* We reached that conclusion even though he did not deny firing the shots. As to the unlawful stop claim, however, we held that we had jurisdiction to consider Hellawell's appeal because he "raise[d] a purely legal issue: whether, based on undisputed facts, [he] violated clearly established law." *Id.*

---

[4] We recognize that some of our pre-*Plumhoff* decisions expressed this principle in less than precise language. *See, e.g.*, *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1179 (9th Cir. 2013) ("To the extent the district court relied upon disputed facts to deny [the defendant] immunity, we lack jurisdiction to review that denial.").

Similarly, we ruled in *Pauluk* that we did not have jurisdiction over the portion of an interlocutory appeal challenging the factual determinations underlying a district court's denial of qualified immunity. The defendants there allegedly exposed an employee to unsafe workplace conditions. *Pauluk*, 836 F.3d at 1119–20. We explained that we could not review the defendants' "arguments that there was insufficient evidence to show that [the workplace] was unsafe, that the defendants acted with deliberate indifference, or that there was a causal relationship between the conditions at [the workplace] and [the employee's] death." *Id.* at 1121. By contrast, we held that we did "have jurisdiction, construing the facts and drawing all inferences in favor of Plaintiffs, to decide whether the evidence demonstrate[d] a [constitutional] violation by [the defendants], and whether such violation was in contravention of federal law that was clearly established at the time." *Id.* (recognizing that these were "purely legal" questions); *see also Advanced Bldg. & Fabrication*, 918 F.3d at 658 (explaining that we had interlocutory appellate jurisdiction because the defendant's "claim of qualified immunity d[id] not turn on the resolution of any factual dispute").[5]

---

[5] These decisions are also consistent with our pre-*Plumhoff* caselaw. In *George*, for example, we refused to consider a factual dispute on interlocutory appeal even though the defendant officers admitted to participating in the shooting at issue. 736 F.3d at 834–36. The officers had fatally shot a man holding a gun, and they later testified that they fired because he had pointed the gun at them. *Id.* at 832–33, 833 n.4. We held that we lacked jurisdiction to review the officers' contention that the plaintiff "could not 'prove at trial' that [the decedent] did not turn and point his gun" at the officers, because that argument went "to the sufficiency of [the] evidence." *Id.* at 834 (quoting *Johnson*, 515 U.S. at 313). But we held that we could review the officers' separate

*Foster*, *Pauluk*, and *Advanced Building & Fabrication* have not been overruled by a Supreme Court decision or an en banc decision of our court.  Nor are their holdings clearly irreconcilable with any intervening Supreme Court decision. We are therefore bound to apply the jurisdictional rule as they stated it.  *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).

## B.

Applying the rule articulated in *Foster*, *Pauluk*, and *Advanced Building & Fabrication*, we conclude that we lack jurisdiction over this appeal because—in light of his concessions at oral argument—Marsh challenges only the district court's determination that there is a genuine factual dispute as to whether Anderson appeared to reach for a weapon before Marsh shot him.

In denying Marsh's summary judgment motion, the district court observed, citing *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc), that "[t]he most important factor" in determining if Marsh's use of force violated the Fourth Amendment "is whether [Anderson] posed an imminent threat to the safety of the officer or others."  The district court then identified several bases on which a jury could conclude, on the evidence in the record, that Anderson "did not make a sudden, furtive reach for the passenger side of [his] car," and therefore that he did not pose an immediate threat to anyone when he was shot. Because of this factual dispute, the district court concluded

---

argument that their conduct was constitutional even on the plaintiff's version of the facts, because that argument raised a purely legal issue. *Id.* at 837–38.

that "[a] reasonable jury could find Officer Marsh's use of deadly force . . . was excessive."

Marsh's interlocutory appeal contests the district court's determination that there is a genuine factual dispute as to whether Anderson made a sudden movement.  Marsh insists that "purported discrepancies in [the] evidence" were not "sufficient" to cast doubt on his account of the events, and that "contemporaneous evidence . . . corroborates [his] testimony" that Anderson made a furtive movement.  Marsh urges us to conduct the qualified immunity analysis taking as true that Anderson made a "sudden movement as though he were reaching for a weapon," and accordingly relies on caselaw holding "that use of deadly force was justified [where] a suspect . . . appeared to reach for, or brandish, a weapon."  In other words, rather than "advanc[ing] an argument as to why the law is not clearly established that takes the facts in the light most favorable to [the Estate]," which we *would* have jurisdiction to consider, Marsh contests "whether there is enough evidence in the record for a jury to conclude that certain facts [favorable to the Estate] are true," which we do *not* have jurisdiction to resolve. *George*, 736 F.3d at 835, 837.**[6]**  Indeed, Marsh conceded at

---

**[6]** Despite Marsh's contention that the "Estate's 'fabrication' theory is not supported by evidence, and thus is only speculation," we do not understand him to be raising a "bare allegation" claim, over which we would have jurisdiction. *See supra* note 3.  Rather, Marsh arrives at this conclusion by disputing the inferences that can be drawn from the evidence that the district court held supported the Estate's version of events, such as the fact that no gun was found in the car and testimony that Marsh did not mention on the scene that he believed Anderson had a gun.  Thus, Marsh's appeal raises the precise type of evidence-sufficiency challenge over which we lack jurisdiction. *See Johnson*, 515 U.S. at 314 (explaining that interlocutory appellate jurisdiction is lacking when "a defendant simply wants to appeal a district court's determination that the evidence is sufficient to permit a particular finding

oral argument that he would have no claim to qualified immunity if the Estate's version of events were found to be true.

Because we may not review on interlocutory appeal the question of evidence sufficiency Marsh raises, we must dismiss his appeal for lack of jurisdiction.  *See Foster*, 908 F.3d at 1210.

## III.

For the foregoing reasons, we dismiss this interlocutory appeal for lack of jurisdiction.

**DISMISSED.**

---

W. FLETCHER, Circuit Judge, dissenting:

*Johnson* strikes again.

Officer John Marsh brought an interlocutory appeal after the district court, viewing disputed evidence in the light most favorable to the plaintiff, denied his motion for summary judgment based on qualified immunity. The district court determined, based on plaintiff's version of the disputed evidence, that there was sufficient evidence to defeat Marsh's motion and go to trial.  Relying on *Johnson v. Jones*, 515 U.S. 304 (1995), and its progeny, the panel majority

---

of fact"); *cf. George*, 736 F.3d at 834 (holding that this court lacked jurisdiction over one of the defendants' arguments on appeal because "[a]lthough couched in the language of materiality, their argument actually goes to the sufficiency of [the plaintiff's] evidence").

holds that we do not have appellate jurisdiction. I respectfully dissent.

I am sympathetic with the panel majority, for the law in this area is extraordinarily confused.

The story begins with *Mitchell v. Forsyth*, 472 U.S. 511 (1985), when the Supreme Court held that an order denying a public official's motion for summary judgment based on qualified immunity is immediately appealable despite the interlocutory character of the order. *Id*. at 524–30. The standard for granting or denying a motion for summary judgment by the district court was not affected by *Mitchell*, but there was uncertainty about the circumstances in which an interlocutory appeal could be heard. Ten years after *Mitchell*, noting that "Courts of Appeals hold different views about the immediate appealability of . . . 'evidence insufficiency' claims made by public official defendants who assert qualified immunity defenses," the Court granted certiorari in *Johnson*. 515 U.S. at 308–9.

The Court's opinion in *Johnson* is puzzling. The plaintiff in *Johnson* sued five police officers for use of excessive force. *Id*. at 307. Three of the officers moved for summary judgment, arguing that there was no evidence that they had beaten plaintiff or had even been present when other officers had done so. *Id.* The district court denied qualified immunity to the three officers, finding that there was a genuine dispute of material fact as to whether they had been present. It held that "there was 'sufficient circumstantial evidence supporting [plaintiff's] theory of the case,'" *id.* at 308, and set the case for trial against all five officers. The three officers appealed the court's interlocutory order denying summary judgment, contending that "the record contained 'not a scintilla of evidence . . . that one or more' of them had 'ever struck, punched or kicked

the plaintiff, or ever observed anyone doing so.'" *Id*. The Seventh Circuit held that it lacked appellate jurisdiction on interlocutory review over questions of "evidence insufficiency." *Id*. The Supreme Court affirmed.

Because *Mitchell* did not change the summary judgment standard in qualified immunity cases, the district court views disputed evidence in such cases in the light most favorable to the plaintiff, just as it does in other summary judgment cases. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The most obvious way to implement *Mitchell* would have been to allow an interlocutory appeal to determine the correctness of the district court's denial of defendant's motion, whether the court (1) used defendant's version of disputed evidence, (2) used plaintiff's version of disputed evidence, viewing the evidence in the light most favorable to the plaintiff, or (3) used undisputed evidence. *See Mitchell*, 472 U.S. at 527 (addressing the first two alternatives). If an appellate court were to have jurisdiction on the second alternative ground, it would be able to address precisely the question decided by district courts in most qualified immunity cases. Yet as I read *Johnson*, the Court did not allow appellate jurisdiction on that ground. It allowed jurisdiction only on the first and third grounds. That is, it allowed jurisdiction only in cases where the district court relied on evidence the defendant did not dispute.

In denying appellate jurisdiction in *Johnson*—where the district court had viewed the evidence in the light most favorable to the plaintiff and had denied defendant's motion for summary judgment—the Court wrote:

> The order in question resolved a *fact*-related dispute about the pretrial record, namely, whether or not the evidence in the pretrial record was sufficient to show a genuine issue

> of fact for trial.  We hold that the defendants cannot immediately appeal this kind of fact-related district court determination.

*Id.* at 307 (emphasis is original).  The "*fact*-related dispute" in *Johnson* was whether the circumstantial evidence, which the officers disputed, was sufficient to deny summary judgment to the defendant officers.

The Court elaborated:

> We . . . consider the appealability of a portion of a district court's summary judgment order that, though entered in a "qualified immunity" case, determines only a question of "evidence sufficiency," *i.e.*, which facts a party may, or may not, be able to prove at trial.  This kind of order, we conclude, is not appealable.    That is, the District Court's determination that the summary judgment record in this case raised a genuine issue of fact concerning petitioners' involvement in the alleged beating of respondent was not a "final decision" within the meaning of the relevant statute.

*Id.* at 313.  The "genuine issue of fact" was whether the defendant officers were "involve[d] in the alleged beating" of the plaintiff.  Based on the evidence he would present to the factfinder at trial, the plaintiff "may, or may not, be able to prove" that fact.

Under my reading of *Johnson*, a court of appeals has jurisdiction only when a district court denies a defendant's motion for summary judgment based on evidence that the defendant does not dispute.  A court of appeals does *not* have

jurisdiction when a district court denies a defendant's motion for summary judgment based on evidence it assumes to be true but that a defendant disputes. By far the majority of denials of summary judgment motions are entered in such cases. That is, the vast majority of cases are those in which the district court determines a question of "evidentiary sufficiency," assuming plaintiff's evidence to be true and determining whether that evidence is sufficient to defeat defendant's motion.

The purpose of qualified immunity is to protect officers from having to go to trial. Qualified immunity is "an *immunity from suit* rather than a mere defense to liability." *Mitchell*, 472 U.S. at 526 (emphasis in original). *Johnson* frustrates the purpose of qualified immunity in cases where the district court, relying on plaintiff's view of the evidence, mistakenly holds as a matter of law that an officer is not entitled to qualified immunity. The Court in *Johnson* explicitly recognized the limited protection provided by its holding:

> We recognize that . . . [our holding] threatens to undercut the very policy (protecting public officials from lawsuits) that (the *Mitchell* Court held) militates in favor of immediate appeals. Nonetheless, the countervailing considerations that we have mentioned (precedent, fidelity to statute, and underlying policies) are too strong to permit the extension of *Mitchell* to encompass appeals from orders of the sort before us.

*Id.* at 317–18 (parentheticals in original).

*Johnson* has created persistent confusion as courts of appeals, including our own, have struggled to reconcile its

apparent holding with the purpose of qualified immunity.  I cite only a few out-of-circuit cases; I could cite many more. *See*, *e.g.*, *Diaz v. Martinez*, 112 F.3d 1, 3 (1st Cir. 1997) ("The dividing line that separates an immediately appealable order from a nonappealable one in these purlieus is not always easy to visualize."); *Camilo-Robles v. Hoyos*, 151 F.3d 1, 8 (1st Cir. 1998) ("Cases are clear enough at the extremes. . . . [But d]etermining the existence *vel non* of appellate jurisdiction in cases closer to the equator is more difficult. . . . If this were not complex enough, the district judge is not legally obliged to explain the basis on which a denial of summary judgment rests."); *Walton v. Powell*, 821 F.3d 1204, 1209 (10th Cir. 2016) ("[W]e have struggled ourselves to fix the exact parameters of the *Johnson* innovation."); *Barry v. O'Grady*, 895 F.3d 440, 446 (6th Cir. 2018) ("Each of our too-many-to-count additional glosses on *Johnson* is needlessly complicated. . . ." (Sutton, J., dissenting)).

The confusion in our sister circuits is matched in our own circuit.  In some cases, we have exercised appellate jurisdiction where genuine issues of material fact existed and the district court viewed the evidence in the light most favorable to the plaintiff.  *See, e.g.*, *Orn v. City of Tacoma*, 949 F.3d 1167, 1171 (9th Cir. 2020) (affirming the district court's denial of summary judgment) ("In an interlocutory appeal challenging the denial of qualified immunity, we must construe the facts in the light most favorable to the plaintiff."); *Tuuamalemalo v. Green,* 946 F.3d 471, 476 (9th Cir. 2019) (affirming the district court's denial of summary judgment) ("We have jurisdiction . . . to review the decision of the district court, viewing the facts in the light most favorable to Tuuamalemalo, the nonmoving party."); *Nicholson v. City of Los Angeles*, 935 F.3d 685, 690 (9th Cir. 2019) (reversing the district court's denial of summary

judgment) ("We have jurisdiction . . . to review the denial of qualified immunity at the summary judgment stage. . . . [W]e are confined to the question of 'whether the defendant[s] would be entitled to qualified immunity as a matter of law, assuming all factual disputes are resolved, and all reasonable inferences are drawn, in plaintiff's favor.'"); *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 601 (9th Cir. 2019) (reversing the district court's denial of summary judgment) ("Based on these facts, which are taken in the light most favorable to [plaintiff], a reasonable officer would not have known that failing to attend to [him] immediately would be unlawful under the law at the time of the incident.").

In other cases, including the case now before us, we have denied appellate jurisdiction. *See, e.g.*, *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1179 (9th Cir. 2013) ("To the extent the district court relied upon disputed facts to deny [defendant] immunity, we lack jurisdiction to review that denial."); *Maropulos v. Cnty. of Los Angeles*, 560 F.3d 974, 975 (9th Cir. 2009) ("[H]is appeal raises issues having to do with sufficiency of the evidence over which we lack jurisdiction. . . . Accordingly, we dismiss."); *Thomas v. Gomez*, 143 F.3d 1246, 1249 (9th Cir. 1998) ("[T]he resolution of this issue involves disputed issues of material fact that need to be resolved by a jury. Accordingly, we dismiss this appeal for lack of jurisdiction[.]"); *Ram v. Rubin*, 118 F.3d 1306, 1308 (9th Cir. 1997) ("To the extent that [defendant] Silva's appeal requires the determination of a fact-related dispute, namely whether the evidence in the pretrial record is sufficient to show a genuine issue of fact for trial, we lack jurisdiction."); *Collins v. Jordan*, 110 F.3d 1363, 1374 (9th Cir. 1996) ("Reviewing the record to determine whether there is sufficient evidence to support [the district court's] determination that there is a factual

dispute . . . would require us to do what we lack jurisdiction to do under *Johnson*.").

In some cases, we have tried to have it both ways. *See, e.g.*, *Foster v. City of Indio*, 908 F.3d 1204, 1207, 1213, 1217 (9th Cir. 2018) ("[W]e view the facts in the light most favorable to the nonmoving party," "lack jurisdiction to consider [defendant's] argument that we should reverse the district court's determination that there was a genuine issue of material fact . . . relating to [defendant's] fatal shooting of [the victim]," and determine "the district court erred in finding a genuine dispute as to whether [defendant] approached [the victim] with his gun drawn."); *George v. Morris*, 736 F.3d 829, 836 (9th Cir. 2013) ("[W]e are confined to the question of 'whether the defendant[s] would be entitled to qualified immunity as a matter of law, assuming all factual disputes are resolved, and all reasonable inferences are drawn, in plaintiff's favor.'"). We wrote in *Pauluk v. Savage*, 836 F.3d 1117, 1121 (9th Cir. 2016):

> Because we do not have jurisdiction over a district court's determination that there are genuine issues of material fact, we cannot review [defendants'] arguments that there was insufficient evidence to show [a violation of clearly established law]. But we do have jurisdiction, construing the facts and drawing all inferences in favor of Plaintiffs, to decide whether the evidence demonstrates a violation by [defendants], and whether such violation was in contravention of federal law that was clearly established at the time.

I wrote the opinion in *Pauluk* and now confess error. I tried to find daylight between deciding (a) defendant's

motion for summary judgment based on "evidentiary insufficiency" (resulting in no jurisdiction), and (b) deciding that same motion after viewing disputed evidence in the light most favorable to plaintiff (resulting in jurisdiction).  But, as I read *Johnson*, there is no daylight between (a) and (b). They are different ways of saying the same thing. "Evidentiary sufficiency" is what a court determines when it views disputed evidence in the light most favorable to the non-moving party and then decides a summary judgment motion based on the evidence so viewed.

The Supreme Court has largely ignored *Johnson*.  In the post-*Johnson* era, the Court initially heard interlocutory appeals without mentioning *Johnson*.  The Court decided appeals on the merits, without addressing jurisdiction, in three cases in which two district courts and one court of appeals had denied officers' motions for summary judgment based on qualified immunity after having made determinations of "evidentiary sufficiency."

In *Saucier v. Katz*, 533 U.S. 194 (2001), plaintiff Katz sued Saucier, a military police officer, under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), alleging excessive use of force.  Saucier moved for summary judgment based on qualified immunity.  The district court denied summary judgment, holding that there was "a dispute on a material fact . . . concerning whether excessive force was used."    533 U.S. at 199.    Saucier brought an interlocutory appeal, which the Ninth Circuit heard and decided.    On certiorari, the Supreme Court recited the standard for summary judgment where there are disputed facts:  "A court required to rule upon the qualified immunity issue must consider . . . this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a

constitutional right?"  *Id.* at 201.  The Court then decided Saucier's interlocutory appeal, reversing the denial of summary judgment, without questioning its own appellate jurisdiction or that of the Ninth Circuit.

In *Brosseau v. Haugen*, 543 U.S. 194 (2004), plaintiff Haugen sued Brosseau, a police officer, under 42 U.S.C. § 1983, alleging excessive use of  force.  The district court granted summary judgment to Brosseau based on qualified immunity.  The Ninth Circuit, viewing disputed evidence in the light most favorable to plaintiff Haugen, held that the evidence, so viewed, was sufficient to support a verdict for plaintiff.   The court reversed and remanded for trial. Without questioning its own appellate jurisdiction, the Court reversed, writing:  "The material facts, construed in a light most favorable to Haugen, are as follows."  *Id.* at 195.  Later in its opinion, the Court recited the language from *Saucier*: "Taken in the light most favorable to the party asserting the injury[.]"  *Id.* at 197.

In *Scott v. Harris*, 550 U.S. 372 (2007), the plaintiff sued Scott, a police officer, under 42 U.S.C. § 1983, alleging excessive use of force.   Scott moved unsuccessfully for summary judgment based on qualified immunity.  The Court noted that "[t]he District Court denied the motion, finding that there are material issues of fact on which the issue of qualified immunity turns which present sufficient disagreement to require submission to a jury."  *Id.* at 376 (internal quotation marks omitted).   Scott brought an interlocutory appeal.   The Eleventh Circuit "[took plaintiff's] view of the facts as given" and affirmed.  *Id.*

In the Supreme Court, the parties in *Scott* argued vigorously for and against appellate jurisdiction, based on conflicting interpretations of *Johnson*.  Resp't's Br., 2007 WL 118977, at *1–3; Pet'r's Reply Br., 2007 WL 760511,

at *1–5. The American Civil Liberties Union ("ACLU") filed an amicus brief devoted solely to arguing, based on *Johnson*, that there was no interlocutory appellate jurisdiction. The ACLU wrote:

> Here, the district court's denial of Petitioner Scott's summary judgment motion expressly determined that the pretrial record set forth a genuine issue of fact for trial. . . . As in *Johnson v. Jones*, therefore, the district court order in this case identified a fact-related dispute about the pre-trial record. Its holding that the evidence in the pre-trial record was sufficient to show a genuine issue of fact for trial is, thus, not appealable.

ACLU Amicus Br., 2007 WL 139201, at *6.

The Supreme Court did not acknowledge the parties' dispute about the availability of appellate jurisdiction under *Johnson*. It simply decided the merits, holding that the officer was entitled to qualified immunity. The Court wrote:

> The first step in assessing the constitutionality of Scott's actions is to determine the relevant facts. As this case was decided on summary judgment, there have not yet been factual findings by a judge or jury, and *respondent's version of events (unsurprisingly) differs substantially from Scott's version*. When things are in such a posture, courts are required to view the facts and draw reasonable inferences "in the light most favorable to the party opposing the [summary judgment] motion." In qualified immunity cases, this usually means adopting

(as the Court of Appeals did here) the plaintiff's version of the facts.

*Scott*, 550 U.S. at 378 (emphasis added; alterations in original and citations omitted).

In none of these three cases, including *Scott*, did the Court cite, or in any way acknowledge, its holding in *Johnson* that there is no appellate jurisdiction in a case in which the district court decides a "*fact*-related dispute," determines a question of "evidentiary sufficiency," and denies summary judgment based on the plaintiff's version of disputed evidence.

In *Plumhoff v. Rickard*, 572 U.S. 765 (2014), the Court finally acknowledged the tension between *Johnson* and its post-*Johnson* practice. Plaintiff was the daughter of the driver of a fleeing car who had been shot and killed by police officers. She brought suit under 42 U.S.C. § 1983, alleging excessive use of force. The district court denied the officers' motion for summary judgment based on qualified immunity. A motions panel of the Sixth Circuit initially dismissed the officers' appeal under *Johnson* on the ground that it lacked jurisdiction. On rehearing, the motions panel vacated its dismissal and referred the jurisdictional issue to a merits panel. *Id.* at 770. The merits panel interpreted *Scott* as having created an "exception" to *Johnson*, allowing an interlocutory appeal "to challenge blatantly and demonstrably false factual determinations." *Id.* at 771 (internal quotation marks omitted). The merits panel heard the appeal and affirmed the district court's denial of summary judgment.

As in *Scott*, the parties argued vigorously in the Supreme Court for and against interlocutory appellate jurisdiction. Resp't's Br., 2014 WL 411285, at *4–5; Pet'r's Reply Br.,

2014 WL 689547, at *1–3. Ohio and twenty-one other states filed an amicus brief devoted almost entirely to *Johnson*. They wrote in their brief:

> The Court should resolve this jurisdictional issue because the circuit courts have erratically applied *Johnson*. And their confusion about *Johnson*'s domain has only increased after *Scott v. Harris*, 550 U.S. 372 (2007), which rejected a district court's version of the disputed facts in the process of finding a police officer entitled to qualified immunity.

States' Amicus Br., 2014 WL 69402, at *2.

Even though there were disputed questions of material fact in *Plumhoff*, the Court heard the appeal on the merits, holding that the officers were entitled to qualified immunity. The Court accepted plaintiff's version of disputed facts, viewed in the light most favorable to the plaintiff. It wrote:

> Because this case arises from the denial of the officers' motion for summary judgment, we view the facts in the light most favorable to the nonmoving party, the daughter of the driver who attempted to flee.

*Id.* at 768. It wrote further:

> The District Court order here is not materially distinguishable from the District Court order in *Scott v. Harris*, and in that case we expressed no doubts about the jurisdiction of the Court of Appeals under § 1291. Accordingly, here, as in *Scott*, we hold that

the Court of Appeals properly exercised jurisdiction, and we therefore turn to the merits.

*Id.* 773.

In exercising appellate jurisdiction, the Court in *Plumhoff* did not acknowledge what it had written in *Johnson* about "evidentiary sufficiency," and it did not dismiss the appeal. Instead, it distinguished *Johnson* on an unrelated and irrelevant ground. It wrote, "The District Court order in this case is nothing like the order in *Johnson*." *Plumhoff*, 572 U.S. at 773. *Johnson* was different, according to the Court in *Plumhoff*, because the three police officers in *Johnson* contended that they had not been present at the beating and had been in no way involved. By contrast, the Court wrote in *Plumhoff*, "Petitioners do not claim that other officers were responsible for shooting Rickard; rather, they contend that their conduct did not violate the Fourth Amendment and, in any event, did not violate clearly established law." *Id.* Just as in *Saucier*, *Haugen*, and *Scott*, the Court in *Plumhoff* never acknowledged *Johnson*'s holding that there is no appellate jurisdiction when a court, relying on plaintiff's disputed evidence, determines a question of "evidentiary sufficiency."

In the four post-*Johnson* cases just cited, the Supreme Court heard appeals in cases where the courts below (three district courts and one court of appeals) denied summary judgment based on plaintiff's version of disputed evidence. All four cases are inconsistent with *Johnson*'s holding that there is no appellate jurisdiction where a court determines "evidentiary insufficiency" based on plaintiff's version of disputed evidence.

After *Plumhoff*, in a case where the district court has denied a motion for summary judgment based on qualified immunity, the rule now appears to be the following: When a district court relies on plaintiff's version of disputed evidence in denying the motion for summary judgment, a court of appeals may generally exercise interlocutory appellate jurisdiction. Only when officers provide disputed evidence showing that they were not present, and were in no way involved in the challenged conduct, is an appellate court without jurisdiction to hear the officers' interlocutory appeal. It is distinctly counterintuitive that this should be the remnant of *Johnson* that survives. Officers who present evidence that they were not even at the scene are among the officers who most deserve the protection of interlocutory appeals. But I have difficulty reading the combination of *Johnson*, *Saucier*, *Haugen*, *Scott,* and *Plumhoff* any other way.

Post-*Plumhoff* decisions by the Court are consistent with this view. In *Mullenix v. Luna*, 577 U.S. 7 (2015), state trooper Mullenix, standing on an overpass, shot into a fleeing car on the highway below, killing the driver. The estate of the driver and others sued Mullenix, alleging excessive force. Viewing disputed evidence in the light most favorable to plaintiffs, the district court denied Mullenix's motion for summary judgment based on qualified immunity. The Fifth Circuit affirmed. In a per curiam opinion, the Supreme Court reversed, writing, "Although Mullenix disputes [certain evidence], we view the facts in the light most favorable to respondents, who oppose Mullenix's motion for summary judgment." *Id.* at 9 n.*.

In *White v. Pauly*, 137 S. Ct. 548 (2017), a police officer shot and killed Samuel Pauly who was standing at an open window holding a handgun. Police officers surrounding the

house may have acted in a manner that caused Pauly and his brother to form a reasonable belief that the officers were private individuals threatening their safety. Pauly's estate and the surviving brother sued the officers, including the shooter, alleging excessive force. Viewing the facts in the light most favorable to plaintiffs, the district court denied a motion for summary judgment based on qualified immunity. The Tenth Circuit affirmed. In a per curiam opinion, the Supreme Court reversed, writing, "The District Court denied the officers' motions for summary judgment, and the facts are viewed in the light most favorable to the Paulys." *Id.* at 550 (citing *Mullenix,* 577 U.S. at 9 n.*).

In neither *Mullenix* nor *Pauly* did the Supreme Court refer to *Johnson.* The Court referred to *Plumhoff* in both cases, but only with respect to its holding on the merits. *Mullenix*, 557 U.S. at 14–15; *Pauly*, 137 S. Ct. at 552. In neither case did the Court express any doubt about the appellate jurisdiction of the Fifth and Tenth Circuits. And in neither case did any of the defendant officers dispute that they were present at the scene.

The case now before us does not belong in the narrow category of cases still apparently governed by *Johnson*. The panel majority accurately recounts the factual dispute. Viewing the disputed evidence in the light most favorable to plaintiff, the district court denied qualified immunity to Officer Marsh. Marsh does not dispute that he was at the scene. Indeed, he concedes that he shot Anderson. Therefore, under *Plumhoff* (as well as *Mullenix* and *Pauly*) we have jurisdiction to hear this appeal.

I close with a plea to the Supreme Court. As is evident from this case and countless others, the Court's *Johnson* jurisprudence has confused courts of appeals for twenty-five years. *Plumhoff* is the only case in which the Supreme Court

has even acknowledged the confusion. Unfortunately, *Plumhoff* and post-*Plumhoff* cases have only perpetuated it. I respectfully ask the Supreme Court to tell us clearly, in an appropriate case, whether and in what circumstances an interlocutory appeal may be taken when the district court, viewing disputed evidence in the light most favorable to plaintiff, has denied a motion for summary judgment based on qualified immunity.