NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAR 16 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JOAQUIN MURILLO, | No. 25-225 |
| Plaintiff - Appellee, | D.C. No. 1:15-cv-00266-DC-SCR |
| v. | |
| K. HOLLAND, Warden; J. GUTIERREZ, Deputy Warden, | MEMORANDUM* |
| Defendants - Appellants, | |
| and | |
| G. YBARRA, JORGE ANDRADE RICO, MAHER CONRAD SUAREZ, CHRISTOPHER LIPSEY, Jr., | |
| Defendants. | |

Appeal from the United States District Court
for the Eastern District of California
Dena M. Coggins, District Judge, Presiding

Argued and Submitted March 4, 2026
San Francisco, California

Before: M. SMITH and R. NELSON, Circuit Judges, and MORRIS, Chief District Judge.**

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Brian M. Morris, United States Chief District Judge for

Wardens Holland and Gutierrez (Defendants) appeal the district court's denial of summary judgment on qualified immunity grounds. This case relates to a decades-long class action related to mental health services provided to inmates in the custody of the California Department of Corrections and Rehabilitation (CDCR). *See Coleman v. Newsom*, No. 2:90-cv-0520-TLN-SCR (E.D. Cal.) (the *Coleman* litigation). Plaintiff Joaquin Murillo brought suit under 42 U.S.C. § 1983, alleging he suffered sleep deprivation in violation of his Eighth Amendment rights due to excessive noise caused by Defendants' implementation of CDCR's Guard One system, a protocol for welfare checks on inmates in administrative segregation and security housing units, at California Correctional Institution (CCI). Defendants moved for summary judgment arguing that they were entitled to qualified immunity; the district court denied their motion.

We have jurisdiction under 28 U.S.C. § 1291. We review the "denial of a motion for summary judgment predicated on qualified immunity" de novo. *Felarca v. Birgeneau*, 891 F.3d 809, 815 (9th Cir. 2018). "Summary judgment is granted only when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* On summary judgment, we "view the evidence in the light most favorable to the nonmoving party." *Id.* "Our interlocutory review jurisdiction is limited to resolving a defendant's purely legal

the District of Montana, sitting by designation.

contention that his or her conduct did not violate the Constitution and, in any event, did not violate clearly established law." *Est. of Anderson v. Marsh*, 985 F.3d 726, 731 (9th Cir. 2021) (cleaned up). We reverse and remand to the district court for dismissal of Defendants, who are entitled to qualified immunity.

Defendants are entitled to qualified immunity "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018) (internal quotation marks omitted). A right is "clearly established" if, "at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Id*. at 63 (cleaned up). We must consider "whether the violative nature of [the defendants'] *particular* conduct is clearly established," and we must do so "in light of the *specific context* of the case, not as a broad general proposition." *Hamby v. Hammond*, 821 F.3d 1085, 1091 (9th Cir. 2016) (emphasis and alterations in original) (internal quotation marks omitted) (citation omitted).

We have "discretion to decide which prong of the qualified immunity analysis to address first." *West v. City of Caldwell*, 931 F.3d 978, 983 (9th Cir. 2019). Because we conclude that our reasoning in *Rico v. Ducart*, extends to the circumstances of this case, we begin and end our analysis with the clearly-established prong. 980 F.3d 1292 (9th Cir. 2020).

In *Rico*, an inmate incarcerated at CDCR's Pelican Bay prison filed a lawsuit pursuant to § 1983 alleging an "Eighth Amendment condition-of-confinement claim for sleep deprivation caused by excessive noise" resulting from Pelican Bay's implementation of the same Guard One system, under the direction of the *Coleman* court. *Id.* at 1295–97. We held that there was no clearly established law that creating such noise was unlawful under the "specific facts presented" by the case before us. *Id.* at 1299. We thus concluded that "every reasonable official would not have understood that how they performed the court-ordered Guard One checks violated the Constitution." *Id.* We found no analogous case law and determined that "the challenged noise arose from activity that was inherently noisy in a facility the very construction of which made difficult quietly conducting round-the-clock welfare checks that defendants were ordered by the *Coleman* court to perform." *Id.* The same is true of the circumstances here.

Plaintiff's attempts to distinguish *Rico* are unavailing. Plaintiff overstates the impact of Pelican Bay's design on our reasoning in *Rico*. We noted that the activity *itself* is "inherently noisy" when carried out at a "facility built of concrete, metal, and steel." *Id.* at 1299–300. That describes all prisons, including CCI, as the record before us makes clear. And Plaintiff testified that even if correctional officers "are being considerate," there is still "loud noise" from the "opening and closing" of cell doors "all night every half hour," rendering the entire Guard One system

"disruptive." We acknowledged as much in *Rico*, explaining that "the officers were undoubtedly and unavoidably going to make noise simply by complying with the court-mandated use of the Guard One system within the SHU at Pelican Bay," and that even "[a]ssuming perfect implementation of the system, inmates were still susceptible to being awoken every hour each night when heavy entry doors to the pods opened and closed." *Id.* at 1302.

Plaintiff also alleges excessive noise by correctional officers in retaliation for inmates' complaints. We explained in *Rico* that *even if* "floor officers" were "causing extra noise by running on the metal stairs, hitting the Guard One discs with more force than necessary, and rushing through checks, it is not 'beyond debate' that every reasonable floor officer would be aware that this conduct violated the law." *Id.* at 1301. Given the breadth of *Rico*'s reasoning on excessive noise, we cannot conclude that Plaintiff's case is sufficiently different as to require the opposite conclusion.

Plaintiff next argues that *Rico* is distinguishable due to "the number of grievances and appeals filed by CCI prisoners," compared with "only a handful of grievances" filed in *Rico*. But even accepting as true Plaintiff's allegations that Defendants were aware of all grievances filed against Guard One at CCI, that does not compel the conclusion that a reasonable supervisory official would have been "on notice" that the conduct of several unnamed floor officers "was illegal." *Inouye*

*v. Kemna*, 504 F.3d 705, 712 (9th Cir. 2007). Rather, as we explained in *Rico*, "no reasonable official would believe that creating additional noise while carrying out mandatory suicide checks for prisoner safety clearly violated . . . constitutional rights." 980 F.3d at 1303.

In sum, *Rico* held that the clearly-established prong was not met where correctional officers implemented an "inherently noisy" system for inmate welfare pursuant to a court order. *Id.* at 1300. Plaintiff does not identify any case that compels the conclusion that Defendants should have understood their supervisory conduct was unlawful. *See Wesby*, 583 U.S. at 63. The cases Plaintiff cites in support of his argument were specifically distinguished by *Rico* because none had considered circumstances where "officials were carrying out a court order designed to benefit at-risk inmates" and where the mandated "activity . . . is inherently noisy." 980 F.3d at 1300. Plaintiff's claim concerns implementation of the same "inherently loud" policy, *id.* at 1303, "in a maximum security facility built of concrete, metal, and steel." *Id.* at 1299. Our reasoning in *Rico* therefore applies.

Accordingly, as in *Rico*, Defendants are entitled to qualified immunity.

**REVERSED AND REMANDED.**